[No. A054965. First Dist., Div. Five. Sept. 15, 1992.]

MENG TAING et al., Plaintiffs and Respondents, v.
JOHNSON SCAFFOLDING COMPANY, Defendant and Appellant;
TURNER CONSTRUCTION COMPANY et al., Defendants and
Respondents;
MARYLAND CASUALTY COMPANY, Intervener and Respondent.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of Facts and part I.

---

## COUNSEL

Wild & Zaragoza, Paul D. Fife and Donald R. Wild for Defendant and Appellant.

Bianco, Brandi & Murphy and Stephen M. Murphy for Plaintiffs and Respondents.

McDonald, Cullom & Burland, Jacob Burland and Sally A. Keane for Defendants and Respondents.

Hanna, Brophy, MacLean, McAleer & Jensen, John L. Armanino and Marianne F. Tancor for Intervener and Respondent.

## OPINION

**HANING, Acting P. J.**—Defendant/appellant Johnson Scaffolding Company appeals a judgment by jury trial in favor of plaintiff/respondent Meng Taing (Taing) et al.[1] in Taing's action for personal injuries suffered in a construction accident. Appellant contends the judgment is not supported by substantial evidence, and that the court erred in awarding Taing prejudgment interest and expert witness fees.

---

[1] Also responding are defendants Turner Construction Company and Metro Post, and complainant in intervention Maryland Casualty Company (Maryland Casualty).

PROCEDURAL HISTORY

On January 15, 1988, Taing was injured when he fell from a scaffold at the Post Street Towers construction site while employed as a plasterer with Meiswinkel, Inc., the plastering subcontractor. Maryland Casualty (Meiswinkel's workers' compensation carrier) sued appellant (the scaffolding sub-subcontractor) and Turner (the general contractor) for reimbursement of workers' compensation benefits paid. Thereafter, Taing filed a personal injury complaint against Turner, appellant, and Metro Post (the owner of Post Street Towers). Appellant, Turner and Metro Post cross-complained for indemnity against Meiswinkel. By stipulation, the actions were consolidated for trial.

Following judicial arbitration (Code Civ. Proc., § 1141.10 et seq.),[2] Meiswinkel and Turner filed a timely request for trial de novo. Taing then served an offer on appellant, Turner and Metro Post to compromise for $249,999 pursuant to section 998. The offer expired without being accepted.

The cross-complaints were bifurcated and trial proceeded on Taing and Maryland Casualty's complaints. The jury returned a special verdict finding appellant 100 percent negligent for Taing's injuries, awarding him damages of $492,626, and reimbursing Maryland Casualty for benefits paid. The court also awarded Taing his expert witness costs under section 998 and prejudgment interest under Civil Code section 3291 from the date of the offer.

FACTS, DISCUSSION I*

. . . . . . . . . . . . . . . . . . . . . . . . .

II

 Appellant also contends the court erred in awarding Taing prejudgment interest and expert witness fees based on his settlement offer under section 998. Section 998, subdivision (d), allows a prevailing party to

---

[2]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

*See footnote, *ante*, page 579.

recover expert witness fees "[i]f an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs." Civil Code section 3291 provides, in relevant part: "If the plaintiff makes an offer pursuant to [section 998] which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to [section 998] which is exceeded by the judgment, and interest shall accrue until the satisfaction of [the] judgment."

Appellant specifically contends that because the joint settlement offer did not specify how the amount should be allocated among the defendants, it is impossible to determine whether Taing received a more favorable judgment against appellant at trial. Appellant also argues that the joint offer unfairly burdened defendants by requiring them each to second-guess whether failure to reach an agreement to settle with the other defendants would risk imposition of section 998 penalties.

The purpose of section 998 is to encourage the settlement of lawsuits before trial by penalizing a party who fails to accept a reasonable offer from the other party. (*T.M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 280 [204 Cal.Rptr. 143, 682 P.2d 338]; *Hurlbut* v. *Sonora Community Hospital* (1989) 207 Cal.App.3d 388, 408 [254 Cal.Rptr. 840].)

We have found no cases regarding section 998 offers made by one plaintiff to several defendants jointly. However, a lump-sum offer to several plaintiffs jointly with no indication of how the offer is to be allocated among them has been held too uncertain to trigger section 998 penalties, because it cannot be determined whether any individual plaintiff's recovery at trial was more favorable than the offer. (See *Meissner* v. *Paulson* (1989) 212 Cal.App.3d 785, 790-791 [260 Cal.Rptr. 826]; *Randles* v. *Lowry* (1970) 4 Cal.App.3d 68, 74 [84 Cal.Rptr. 321].) Likewise, section 998 offers, initiated by several plaintiffs jointly, have generally been considered too uncertain, at least where it was impossible to tell whether any single plaintiff's recovery at trial exceeded the amount of the rejected offer. (See *Gilman* v. *Beverly California Corp.* (1991) 231 Cal.App.3d 121, 126 [283 Cal.Rptr. 17]; *Hurlbut* v. *Sonora Community Hospital*, *supra*, 207 Cal.App.3d at p. 410; cf. *Fortman* v. *Hemco, Inc.* (1989) 211 Cal.App.3d 241, 261-263 [259 Cal.Rptr. 311].)

A settlement offer made jointly by several defendants to a specific plaintiff may be sufficient to trigger section 998 penalties where the defendants are jointly and severally liable. (See *Brown* v. *Nolan* (1979) 98 Cal.App.3d 445, 451 [159 Cal.Rptr. 469].) However, in post-Proposition 51 cases, where each defendant is only jointly liable for the plaintiff's economic damages but severally liable for noneconomic damages in proportion to that defendant's degree of wrongdoing (Civ. Code, § 1431.2), the validity of such an offer is questionable.

When concurrent tortfeasors are sued, the various defendants risk liability exposure to the plaintiff and are subject to comparative indemnity claims among themselves. (See *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 591-604 [146 Cal.Rptr. 182, 578 P.2d 899].) Under section 877.6, a good faith settlement determination bars the nonsettling joint tortfeasors' claims against the settling defendant for partial or comparative indemnity, based on comparative negligence. If a settlement demand to multiple codefendants is apportioned or segregated as to each or any of them, any such defendant can accept the demand and seek a good faith settlement determination. If the settlement is made in good faith, the settling defendant terminates any further liability to the plaintiff and any codefendants seeking indemnity.

However, the same is not true of an unapportioned offer by a single plaintiff to multiple defendants, since it requires any defendant who wants to accept to obtain the concurrence of his or her codefendants. This places a reasonable defendant at the mercy of codefendants whose refusal to settle may be unreasonable. For example: Assume a joint settlement offer of $300,000 to three defendants by a single plaintiff. Defendants A and B want to accept and suggest that each defendant pay $100,000, but defendant C refuses. The case is tried, plaintiff receives $600,000 in economic damages and defendants are found equally liable. In addition to their responsibility for the judgment, defendants A and B are now subject to section 998 penalties along with C, although it was their desire to accept the plaintiff's offer of settlement. On the other hand, can defendants argue that since plaintiff did not obtain a $300,000 verdict against any one of them, they beat plaintiff's offer?

Assume the same offer, but a $330,000 verdict apportioned among the three defendants in the ratio of 20 percent ($66,000) for defendant A, 30 percent ($99,000) for defendant B and 50 percent ($165,000) for defendant C. Are all three defendants liable for section 998 costs and prejudgment interest because plaintiff's judgment exceeded his aggregate offer? Or, since the judgment against each individual defendant is substantially less than

plaintiff's offer, must plaintiff's claim for section 998 costs and prejudgment interest be denied?

■ Taing points out that by any calculation he obtained a more favorable judgment against appellant, since appellant could have paid the *entire* amount of Taing's offer and still fared better than the ultimate judgment. However, at the time Taing made his section 998 offer to settle, it was his stated position that *all three* defendants were liable, although he did not advise them of his position as to their individual percentage of liability. Given this position, it is questionable whether Taing could reasonably have expected appellant to pay the entire settlement figure and then litigate the liability and damage factors with its codefendants. This defeats one of the benefits of section 998 for the defendant: avoidance of the time and expense of litigation.

While it is correct, as Taing contends, that the efficacy of a section 998 offer is generally determined by hindsight, the hindsight merely measures the amount of the judgment against the amount of the offer. However, from the perspective of the offeree, the offer must be sufficiently specific to permit the individual defendant to evaluate it and make a reasoned decision whether to accept without the additional burden of obtaining the acceptance of codefendants or suffering from their refusal to settle, especially when that refusal may have been unreasonable.

■ The burden of assuring that the offer complies with section 998 falls on the offeror. This should not unduly burden plaintiffs making offers to multiple defendants. The plaintiff has already determined that the individual defendants are liable in some degree, and in our experience plaintiffs frequently make informal offers of settlement to individual defendants in multiple defendant cases. Sections 877 through 877.6 specifically provide for such settlements, and the case law contains numerous examples thereof. (See, e.g., *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159]; *Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858 [239 Cal.Rptr. 626, 741 P.2d 124]; *Far West Financial Corp.* v. *D & S Co.* (1988) 46 Cal.3d 796 [251 Cal.Rptr. 202, 760 P.2d 399].)

Section 998 has been part of California law since 1851 (see Stats. 1851, ch. CXXIII, tit. 10, ch. 5., § 390), and although it has undergone some modification over the years, it remains essentially unchanged in substance. It has never been amended in response to the changes in the law regarding comparative indemnity (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578) which evolved out of the transition from contributory to comparative negligence (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119

Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]), or the modification of joint and several liability by Proposition 51. (Civ. Code, § 1431 et seq.) In cases with multiple defendants, the *American Motorcycle* decision and Proposition 51 play a significant role in the determination of each defendant's ultimate responsibility. Consequently, in light of these developments, if a plaintiff elects to submit a section 998 offer in cases involving multiple defendants, the offer to any defendant against whom the plaintiff seeks to extract penalties for nonacceptance must be sufficiently specific to permit that individual defendant to determine the exact amount plaintiff is seeking from him or her. ■ Taing's offer in this case did not do so.

The award of prejudgment interest and expert witness fees is reversed. The judgment is otherwise affirmed. Parties to bear their own costs.

King, J., and Hanlon J.,* concurred.

*Judge of the San Francisco Superior Court sitting under assignmnent by the Chairperson of the Judicial Council.