[No. B097270. Second Dist., Div. Four. Nov. 21, 1996.]

PHYLLIS STEINFELD, Plaintiff and Respondent, v.
FOOTE-GOLDMAN PROCTOLOGIC MEDICAL GROUP, INC., et al.,
Defendants and Appellants.

## COUNSEL

Schmid, Norek & Voiles, Douglas B. Voiles, Thelen, Marrin, Johnson & Bridges, Glenn Cornell and Shea Hutchins Lukacsko for Defendants and Appellants.

Charlotte E. Costan, Davis & Thomas and Joseph Daniel Davis for Plaintiff and Respondent.

## OPINION

**EPSTEIN, J.**—This appeal challenges the award of prejudgment interest and expert fees to a successful plaintiff following an unapportioned statutory offer of compromise presented to two defendants. We conclude that where multiple defendants face joint and several liability for the entire judgment, the statutory offer to compromise need not be apportioned. We also find no basis to toll the accumulation of prejudgment interest during the pendency of plaintiff's earlier unsuccessful appeal.

### FACTUAL AND PROCEDURAL SUMMARY

In 1984, Phyllis Steinfeld filed a medical malpractice action against Foote-Goldman Proctologic Medical Group, Inc. (Medical Group) and Dr.

Harris S. Goldman. The complaint contains a single cause of action against both defendants, alleging that they "negligently, carelessly, recklessly and unlawfully treated and cared for Plaintiff, PHYLLIS STEINFELD, including but not limited to negligently prescribing medication to Plaintiff and negligently treating and caring for Plaintiff and diagnosing Plaintiff's condition, so that Plaintiff was caused to and did suffer the injuries and damages hereinafter alleged." Dr. Goldman answered in December 1986, and Medical Group answered in June 1987.

In August 1987, Ms. Steinfeld served a statutory offer to compromise (Code Civ. Proc., § 998 (hereafter section 998)) on both defendants. The statutory offer read: "Plaintiff, PHYLLIS STEINFELD, hereby offers to allow judgment to be taken in favor of Plaintiff, PHYLLIS STEINFELD, and against Defendants, HARRIS S. GOLDMAN, M.D. and FOOTE-GOLDMAN PROCTOLOGIC MEDICAL GROUP, INC., in the total sum of Two Hundred Twenty Five Thousand Dollars ($225,000.00), inclusive of costs." Neither defendant accepted the offer.

The case was tried in May 1990. The jury found Dr. Goldman negligent in the medical treatment he rendered to Ms. Steinfeld, and returned a verdict of $620,809 against him. Dr. Goldman moved for new trial based on excessive damages. The court granted the motion on that ground, finding insufficient evidence that plaintiff was unable to work. The court ordered a new trial unless plaintiff agreed to accept a reduction in damages to $347,295. The court also ruled that plaintiff was entitled to prejudgment interest. Ms. Steinfeld did not accept the reduction, and the case was tried a second time.

The second trial was limited to the issue of damages. Ms. Steinfeld presented evidence that she is totally disabled. On December 9, 1991, the jury awarded her $1,155,000 in damages, and judgment was entered against "Foote-Goldman Proctologic Medical Group, Inc., et al." Dr. Goldman moved for a new trial based on juror misconduct. The court "reluctantly" ordered a new trial on that basis, even though it did not find prejudice. Ms. Steinfeld appealed, and the order was affirmed in an unreported opinion (*Steinfeld* v. *Foote-Goldman Proctologic Medical Group, Inc.* (Aug. 12, 1994) No. B065614).

The case was tried a third time, on the issue of damages only. On April 24, 1995, the jury awarded Ms. Steinfeld net damages of $1,164,400 against

both defendants.[1] That same day, Ms. Steinfeld filed the rejected section 998 statutory offer to compromise. Defendants moved to strike the section 998 offer and to disallow prejudgment interest and expert witness costs. They asserted the offer to compromise was invalid when made because Ms. Steinfeld directed it to Dr. Goldman and the Medical Group, but did not attempt to apportion the offer between them. They also claimed Ms. Steinfeld's right to prejudgment interest should have been suspended during the period when she unsuccessfully appealed the granting of a new trial, and that she was not entitled to prejudgment interest on future economic damages. The court rejected these challenges, and entered judgment which included prejudgment interest, costs, and expert witness fees. Defendants appeal from the judgment.

DISCUSSION

I

*Unapportioned Offer to Compromise*

Section 998 provides for a reallocation of allowable costs when a party rejects an offer to compromise, and the offering party subsequently obtains a more favorable judgment. Under subdivision (d), "If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs."

Civil Code section 3291 provides that "If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment."

Appellants claim the trial court erred in applying these provisions to augment respondent's judgment because respondent made a joint offer to

---

[1]The jury awarded plaintiff $650,000 for pain and suffering, which was reduced to the statutory limit of $250,000, pursuant to Civil Code section 3333.2, subdivision (b).

both defendants, without expressly apportioning the offer between them. They rely on *Taing* v. *Johnson Scaffolding Co.* (1992) 9 Cal.App.4th 579 [11 Cal.Rptr.2d 820], which held that ". . . if a plaintiff elects to submit a section 998 offer in cases involving multiple defendants, the offer to any defendant against whom the plaintiff seeks to extract penalties for nonacceptance must be sufficiently specific to permit that individual defendant to determine the exact amount plaintiff is seeking from him or her." (*Id.* at p. 586.) As we shall explain, we find *Taing* inapplicable to this case.

In *Taing*, plaintiff was injured when he fell from a scaffold while working as a plasterer. Plaintiff Taing sued the scaffolding company, the general contractor, and the owner of the building being plastered. Taing served an unapportioned offer to compromise under section 998 on all three defendants, offering to settle the case for $249,999. The offer expired without being accepted. At trial, the jury found the scaffolding company 100 percent negligent, and awarded Taing damages of $492,626. Since Taing recovered a judgment against the scaffolding company greater than the settlement offer, the court awarded Taing his expert witness costs and prejudgment interest based on the section 998 offer. (9 Cal.App.4th at p. 581.)

The Court of Appeal held Taing's unapportioned settlement offer was too uncertain to trigger section 998 penalties. Since the offer was not specific as to the amount sought from each of the three defendants, the court found they were unable to evaluate it and make a reasoned decision whether to accept it. In order to accept the offer, defendants would have had to obtain the acceptance of codefendants or suffer from their refusal to settle, an untenable position not anticipated by the statute. (9 Cal.App.4th at p. 585.)

A different conclusion was reached in *Bihun* v. *AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976 [16 Cal.Rptr.2d 787], disapproved on another ground in *Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 664 [25 Cal.Rptr.2d 109, 863 P.2d 179]. *Taing* was decided while the appeal was pending in *Bihun*. Defendant AT&T sought refuge in the *Taing* holding, even though it had not raised the issue of the unapportioned settlement offer in the trial court; plaintiff argued the issue had been waived. The Court of Appeal recognized that *Taing* involved a new point of law (the effect of an unapportioned joint offer to multiple defendants), decided while the appeal was pending. The court observed, however, that AT&T could have argued the point by analogy to the numerous cases prior to *Taing* which addressed the effectiveness of unapportioned settlement offers to and from multiple plaintiffs.

The court went on: "The most compelling reason for not allowing AT&T to raise the issue of an unapportioned settlement offer for the first time on

appeal is that the settlement offer in this case did not put AT&T in the untenable position of the defendants in *Taing.* Therefore, no 'manifest injustice' will result if AT&T is not allowed to add this issue to its appeal." (13 Cal.App.4th at p. 1000.)

The court proceeded to analyze and distinguish *Taing.* The first distinction was the most significant: the defendants in *Taing* were not jointly liable for the full amount of the plaintiff's damages. That was because *Taing* followed adoption of Proposition 51, which abolished joint liability for noneconomic damages in negligence suits.[2] By contrast, in *Bihun,* defendant AT&T was jointly liable with its employees on a respondeat superior or vicarious liability theory for the full amount of damages on every cause of action in which it was named as a defendant, and was not liable at all on the causes of action in which it was not named as a defendant. "Thus, unlike the scaffolding company in *Taing,* AT&T's principal dilemma was liability vel non, not apportionment of damages. As noted above, the fact the settlement offer included causes of action against the employees for which AT&T would not have been liable required an assessment by AT&T of its chances of being held *liable* to plaintiff; a different calculation from its assessment of whether it would suffer a damage award in excess of the settlement offer assuming its liability was established. [¶] Even when there is only one defendant or the settlement offer is apportioned among several defendants a defendant must always assess its chances of being found liable to the plaintiff in determining how to respond to a settlement offer. Thus, the unapportioned settlement offer in the present case did not put AT&T in a dilemma not faced by every defendant who receives an offer of settlement under Code of Civil Procedure section 998." (*Bihun* v. *AT&T Information Systems, Inc., supra,* 13 Cal.App.4th at p. 1001, italics in original.)

Our case is more like *Bihun* than like *Taing.* Respondent's complaint against Dr. Goldman and the Medical Group alleged a single cause of action, for medical negligence, against both appellants. Her complaint contains an agency allegation: "At all times herein mentioned, Defendants, and each of them, were the agents, servants and employees, each of the other, and at all times pertinent hereto were acting within the course and scope of their authority as such agents, servants and/or employees." Respondent alleged that she consulted the Medical Group and Dr. Goldman for the purpose of

[2]Civil Code section 1431.2, enacted in 1986, provides in part: "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to the defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

obtaining medical diagnosis and treatment, and that "said Defendants, and each of them, thereafter entered on such employment, individually and by and through their employees and agents. [¶] 6. From and after said time, Defendants, and each of them, so negligently, carelessly, recklessly and unlawfully treated and cared for Plaintiff, PHYLLIS STEINFELD, including but not limited to negligently prescribing medication to Plaintiff and negligently treating and caring for Plaintiff and diagnosing Plaintiff's condition, so that Plaintiff was caused to and did suffer the injuries and damages hereinafter alleged."

Appellants were sued as joint tortfeasors for a single act of negligence causing a single injury. In this case, which preceded the adoption of Proposition 51, they faced joint and several liability for respondent's economic and noneconomic damages. Under the reasoning of *Bihun*, the fact that the settlement offer was unapportioned did not place appellants in an untenable position, since if they were liable at all, they were jointly and severally liable. (13 Cal.App.4th at p. 1001.)

Appellants argue that the court's analysis in *Bihun* is dicta, and hence not authority upon which we can rely. But we think it clear that the court's decision not to permit AT&T to raise the issue of an unapportioned offer rested in large part on its determination that AT&T was in a different position than the defendant in *Taing*. ■ " '[W]here two independent reasons are given for a decision, neither one is to be considered mere *dictum*, since there is no more reason for calling one ground the real basis of the decision than the other. The ruling on both grounds is the judgment of the court and is of equal validity. [Citations.]' " (*Southern Cal. Ch. of Associated Builders etc. Com.* v. *California Apprenticeship Council* (1992) 4 Cal.4th 422, 431, fn. 3 [14 Cal.Rptr.2d 491, 841 P.2d 1011].) The *Bihun* court's analysis of *Taing*, and its determination that *Taing* is distinguishable, are part of the basis for its decision, not mere dicta.

■ We find support for our conclusion in our Supreme Court's decision in *Lakin* v. *Watkins Associated Industries, supra*, 6 Cal.4th 644, another case involving a plaintiff's right to prejudgment interest following a statutory offer to settle. Plaintiff made her offer to a trucking company. It was rejected. The eventual judgment was comprised of an award of punitive damages against the trucking company, and an award of compensatory damages jointly and severally against the trucking company and the truck driver. In a footnote, the court observed: "We perceive no significance in the fact that the compensatory damages claimed against defendant trucking company included damages for the conduct of defendant truck driver. If

plaintiff had made an undifferentiated settlement offer to both defendants and then had obtained a judgment for which defendants were not jointly liable, an issue of apportionment might arise. (See, e.g., *Taing* v. *Johnson Scaffolding Co.* (1992) 9 Cal.App.4th 579 [11 Cal.Rptr.2d 820].) The present situation, however, differs in two respects: plaintiff made her offer to only one defendant, and that defendant was either solely liable or jointly and severally liable for the entire judgment. (See *Bihun* v. *AT&T Information Systems, Inc.*, *supra*, 13 Cal.App.4th at pp. 1000-1001.)" (6 Cal.4th at p. 658, fn. 9.)

Appellants argue that questions asked at a deposition the day before the offer was served indicated respondent might pursue a separate theory of liability against the Medical Group based on the failure of Medical Group personnel to deliver respondent's telephone message about her reaction to the prescribed medication to Dr. Goldman. But even this potential theory, which was not included in the complaint, would be swept up by respondent's agency allegations. The fact that the agency allegations are made in general terms does not preclude them from being effective to render appellants liable for each other's acts. Where, as here, there is a singular theory of liability alleged against two defendants for a single injury, and where as joint tortfeasors they would be jointly and severally liable, an unapportioned section 998 settlement offer made to both is valid.

## II

### *Calculation of Prejudgment Interest*

■ Appellants claim they should not be charged with prejudgment interest for the period during respondent's unsuccessful appeal from the order granting a new trial after the second trial. Civil Code section 3291 makes no distinction between accrual of interest while a case is pending in the trial court and while it is on appeal. The statute provides that "the judgment shall bear interest at the legal rate of 10 percent per annum *calculated from the date of the plaintiff's first offer* pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, *and interest shall accrue until the satisfaction of judgment.*" (Italics added.)

Nothing in this straightforward language purports to toll the running of interest during any period when the trial court is without jurisdiction. Appellants' reliance on *Woodard* v. *Southern Cal. Permanente Medical Group* (1985) 171 Cal.App.3d 656 [217 Cal.Rptr. 514] does not aid them. That case simply considered whether Civil Code section 3291 and Code of Civil Procedure section 998 apply to arbitration proceedings. Nor are appellants helped by *Hersch* v. *Citizens Savings & Loan Assn.* (1983) 146

Cal.App.3d 1002 [194 Cal.Rptr. 628], which addressed the appropriate remedy to be imposed on a party when an appeal is taken for the purpose of delay. No such determination was made in this case.

Finally, appellants ask that we reverse the portion of the judgment which awards prejudgment interest on future damages. This argument has been rejected in *Hrimnak* v. *Watkins* (1995) 38 Cal.App.4th 964, 980-981 [45 Cal.Rptr.2d 514], a case we believe was correctly decided.

### DISPOSITION

The judgment is affirmed. Respondent is to have her costs on appeal.

Vogel (C. S.), P. J., and Baron, J., concurred.