[No. G029586. Fourth Dist., Div. Three. June 6, 2003.]

REBECCA A. BURCH, an Incompetent Person, etc., Plaintiff and Appellant, v.
CHILDREN'S HOSPITAL OF ORANGE COUNTY THRIFT STORES, INCORPORATED, et al., Defendants and Respondents.

538

**COUNSEL**

Grassini & Wrinkle and Roland Wrinkle for Plaintiff and Appellant.

Hillsinger, Forgey, Hurrell & Star, Darrell Forgey, John Aitelli; Greines, Martin, Stein & Richland, Kent L. Richland and Jens B. Koepke for Defendants and Respondents.

## OPINION

FYBEL, J.—Plaintiff Rebecca A. Burch is the victim of severe personal injuries resulting from the collision of her automobile with a truck driven by defendant Eddie Phillip Bretado. Bretado was employed by defendant Children's Hospital of Orange County Thrift Stores, Incorporated (CHOC Thrift Stores), owned by defendant Children's Hospital of Orange County (CHOC). Bretado was acting in the course and scope of his employment at the time of the accident. Defendant Westrux International, Inc., was the owner and lessor of the truck driven by Bretado.

Burch's first amended complaint (the complaint) alleged several theories of liability against all four defendants. These theories included negligent maintenance and negligent entrustment of the truck owned by Westrux. In July 2000, Burch served an unapportioned settlement offer of $50 million on all defendants under Code of Civil Procedure section 998. (All further statutory references are to the Code of Civil Procedure unless otherwise specified.) Defendants did not accept Burch's offer.

As of the time of the section 998 offer, (1) the complaint alleged certain theories of liability that could make defendants liable, but not jointly and severally liable for the full amount of the judgment under the permissive user doctrine and Proposition 51, and (2) defendants' answers to the complaint each contained a general denial and several affirmative defenses. At trial in May 2001, defendants stipulated to joint and several liability and the case was tried to a jury on damages. The jury awarded Burch damages in excess of $50 million, including an "undiscounted amount of past and future noneconomic damages."

Burch moved for an award of expert witness costs in the amount of $68,016.44 and prejudgment interest in excess of $4 million under section 998 and Civil Code section 3291, respectively. The trial court denied Burch's motion. Burch appealed the trial court's order as to CHOC Thrift Stores and CHOC only. We hold Burch's section 998 offer was not valid because it was not apportioned among defendants and, as of the time of the offer, under the pleadings, defendants could have been found liable, but not jointly and severally liable for the full amount of the judgment under the permissive user doctrine and Proposition 51.[1] Therefore, we affirm the denial of Burch's motion seeking prejudgment interest under Civil Code section 3291 and expert witness costs under section 998.

---

[1] Cases and treatises use the words "valid," "effective," and "sufficient" interchangeably to describe whether section 998 penalties are triggered. We use the word "valid" to avoid confusion because most courts have used that term in this context.

Defendants contend the offer was invalid because it was "conditional" and Burch did not obtain a more favorable result at trial because the jury's award included an award of future noneconomic damages not discounted to present value. In view of our holding, we do not reach these arguments.

BACKGROUND

On February 3, 1999, Burch was severely injured after her car was hit by a truck owned by Westrux. The truck was leased by Westrux to CHOC Thrift Stores and driven at the time by Bretado during the course of his employment with CHOC Thrift Stores.

Burch filed the complaint against CHOC Thrift Stores, CHOC, Bretado, and Westrux on February 3, 2000. The complaint contained a single cause of action for negligence and alleged: (1) "defendants, and each of them, were the agents, servants, employees, successors-in-interest, joint venturers, and assigns, each of the other, and at all times pertinent hereto were acting within the course and scope of their authority as such agents, servants, employees, successors, joint venturers, and assigns"; (2) defendants "were the owners, operators, lessees, and lessors of a certain International truck, and at all times herein mentioned, were driving said vehicle with the knowledge, permission, and consent, each of the other"; and (3) on February 3, 1999, defendants "so negligently, carelessly, recklessly, and unlawfully owned, drove, maintained, operated, entrusted, and controlled their said vehicle so as to cause it to collide with and crash into the vehicle driven by plaintiff, thereby directly and legally causing the injuries and damages to plaintiff as herein after enumerated." Thus, among other allegations, the complaint alleged theories of negligent maintenance and negligent entrustment against Westrux as well as the other defendants.

On February 14, 2000, CHOC Thrift Stores, CHOC, and Bretado filed their answer to the complaint. Westrux filed its answer on March 31.

On July 24, 2000, Burch served all four defendants with a statutory offer to compromise under section 998. Burch's offer stated as follows: "TO DEFENDANTS CHILDREN'S HOSPITAL OF ORANGE COUNTY THRIFT STORES, INCORPORATED, CHILDREN'S HOSPITAL OF OR-ANGE COUNTY, EDDIE PHILIP BRETADO, AND WESTRUX INTER-NATIONAL, INC., AND TO THEIR ATTORNEYS OF RECORD: [¶] Plaintiff, REBECCA A. BURCH, an incompetent person, by Jeffrey N. Burch, her guardian ad litem, offers to have judgment taken against defend-ants CHILDREN'S HOSPITAL OF ORANGE COUNTY THRIFT STORES, INCORPORATED, CHILDREN'S HOSPITAL OF ORANGE

COUNTY, EDDIE PHILIP BRETADO, and WESTRUX˙ INTERNATIONAL, INC., and for herself in the above entitled action pursuant to section 998 of the Code of Civil Procedure for the sum of FIFTY MILLION DOLLARS ($50,000,000.00), each party to bear their own costs and attorneys' fees. [¶] If you accept this offer, please file the offer and notice of acceptance in the above-entitled action prior to trial or within thirty (30) days of service of this offer, whichever occurs first, or it will be deemed withdrawn." Burch's offer expired before any defendant accepted.

Approximately 10 months later and before trial, in May 2001, all four defendants admitted liability. At trial, defendants stipulated that Westrux and Bretado were the agents of CHOC Thrift Stores and CHOC and thus stipulated to joint and several liability among defendants.

The case was tried to a jury on the issue of damages only. The jury returned a verdict awarding Burch damages as follows: $1,488,361.40 in past economic damages; $25,150,831 in present cash value of future economic damages; and $25 million in undiscounted past and future noneconomic damages. Judgment was entered in favor of Burch and against defendants, "jointly and severally," for $51,639,192.40.

Burch filed a motion for an award of prejudgment interest in the amount of $4,272,612.63 and expert witness costs in the amount of $68,016.44. The motion was made on the ground that Burch served a statutory offer to compromise under section 998 which was not accepted by defendants, and the judgment entered in Burch's favor exceeded the section 998 offer. Defendants opposed Burch's motion, arguing the section 998 offer was invalid because it did not inform each defendant of what each defendant must pay to settle the case, it constituted an unapportioned offer to multiple defendants, and the vicarious liability exception, explained below, did not apply.

Attached to the trial court's minute order dated June 27, 2001 was the court's "Ruling on Plaintiff's Motion For Award of Prejudgment Interest and Expert Costs" denying Burch's motion. The court's ruling stated in part: "Civil Code Section 1431.2 abolished joint liability for non-economic damages in negligence actions. Plaintiff made an undifferentiated settlement offer pursuant to Civil Code of Procedure [sic] Section 998 as to all four defendants, which was not accepted. The offer was invalid as there was not joint and several liability as to all four defendants. The fact that defendants and each of them admitted liability prior to trial and sti[]pulated to joint and several liabil[i]ty at trial is not determinative. Therefore, the motion is DENIED."

Burch appealed the trial court's order as to defendants CHOC Thrift Store and CHOC only.

I. *Standard of Review and Burden of Proof.*

■ The facts relevant to Burch's appeal are undisputed. Therefore, we review de novo the trial court's denial of Burch's motion for an award of prejudgment interest and expert witness costs. (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 797 [101 Cal.Rptr.2d 167] ["[T]he issue here is the application of section 998 to an undisputed set of facts. That issue is one of law, which we review de novo"]; *Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 999 [16 Cal.Rptr.2d 787] (*Bihun*) ["In the present case the relevant facts are undisputed. . . . Thus, the case raises a pure question of law involving the interpretation and applicability of Civil Code section 3291 and Code of Civil Procedure section 998"].)

■ "In interpreting section 998, this court has placed squarely on the offering party the burden of demonstrating that the offer is a valid one under section 998. [Citation.] The corollary to this rule is that a section 998 offer must be strictly construed in favor of the party sought to be subjected to its operation." (*Barella v. Exchange Bank, supra,* 84 Cal.App.4th at p. 799.)

II. *Section 998 and Civil Code Section 3291.*

Section 998, subdivision (b) provides in part: "Not less than 10 days prior to commencement of trial . . . , any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. [¶] . . . [¶] (2) If the offer is not accepted prior to trial or arbitration, within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial or arbitration." Subdivision (d) of section 998 provides: "If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the plaintiff, in addition to plaintiff's costs."

If a defendant fails to accept a plaintiff's section 998 offer and also fails to obtain a judgment that is more favorable than the plaintiff's offer, the

plaintiff may seek prejudgment interest under Civil Code section 3291, which provides in part: "In any action brought to recover damages for personal injury sustained by any person resulting from or occasioned by the tort of any other person, corporation, association, or partnership . . . , it is lawful for the plaintiff in the complaint to claim interest on the damages alleged as provided in this section. [¶] If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment."

■ "As recognized in numerous Court of Appeal decisions, the clear purpose of section 998 and its predecessor, former section 997, is to encourage the settlement of lawsuits prior to trial." (*T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 280 [204 Cal.Rptr. 143, 682 P.2d 338].) "The purpose of section 998 is to encourage the settlement of lawsuits before trial by penalizing a party who fails to accept a reasonable offer from the other party." (*Taing v. Johnson Scaffolding Co.* (1992) 9 Cal.App.4th 579, 583 [11 Cal.Rptr.2d 820] (*Taing*); *Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699 [241 Cal.Rptr. 108] ["Section 998 achieves its aim by punishing a party who fails to accept a reasonable offer from the other party" (italics omitted)].)

III. *Unapportioned Section 998 Offers to Multiple Defendants.*

■ In general, "a section 998 offer made to multiple parties is valid only if it is expressly apportioned among them and not conditioned on acceptance by all of them. [Citations.] A single, lump sum offer to multiple plaintiffs which requires them to agree to apportionment among themselves is not 'valid. [Citation.] Likewise, a lump sum offer by a plaintiff to multiple defendants may be invalid for the same reasons." (*Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102, 112 [30 Cal.Rptr.2d 486].) "To be effective, an offer to multiple parties under section 998 must be explicitly apportioned among the parties to whom the offer is made so that each offeree may accept or reject the offer individually." (*Palmer v. Schindler Elevator Corp.* (2003) 108 Cal.App.4th 154, 157 [133 Cal.Rptr.2d 339].)

The following three cases have considered the validity of unapportioned lump sum settlement offers under section 998 to multiple defendants: *Taing,*

*supra,* 9 Cal.App.4th 579; *Bihun, supra,* 13 Cal.App.4th 976; and *Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc.* (1996) 50 Cal.App.4th 1542 [58 Cal.Rptr.2d 371] (*Steinfeld*).

In *Taing, supra,* 9 Cal.App.4th 579, the court held an unapportioned section 998 offer made by a plaintiff to multiple defendants jointly was insufficient to trigger section 998 penalties. Taing, an employee of a plastering subcontractor, was injured on the job when he fell from a scaffold at a construction site. (*Taing,* at p. 582.) Taing sued the general contractor, the scaffolding subcontractor, and the owner of the property where the accident occurred. Taing served the three defendants with an unapportioned section 998 offer in the amount of $249,000, which the defendants did not accept. (*Taing,* at p. 582.) Following trial, the jury concluded the scaffolding subcontractor was 100 percent negligent and awarded Taing $492,626. (*Ibid.*) The trial court then awarded expert witness costs and prejudgment interest against the scaffolding subcontractor under section 998 and Civil Code section 3291, respectively. (*Taing,* at p. 582.)

On appeal, the scaffolding subcontractor argued that because Taing's section 998 offer "did not specify how the amount should be allocated among the defendants, it is impossible to determine whether Taing received a more favorable judgment against appellant at trial." (*Taing, supra,* 9 Cal.App.4th at p. 583.) The scaffolding subcontractor further argued that "the joint offer unfairly burdened defendants by requiring them each to second-guess whether failure to reach an agreement to settle with the other defendants would risk imposition of section 998 penalties." (*Ibid.*)

The *Taing* court stated, "We have found no cases regarding section 998 offers made by one plaintiff to several defendants jointly. However, a lump-sum offer to several plaintiffs jointly with no indication of how the offer is to be allocated among them has been held too uncertain to trigger section 998 penalties, because it cannot be determined whether any individual plaintiff's recovery at trial was more favorable than the offer. [Citations.] Likewise, section 998 offers, initiated by several plaintiffs jointly, have generally been considered too uncertain, at least where it was impossible to tell whether any single plaintiff's recovery at trial exceeded the amount of the rejected offer. [Citations.] [¶] A settlement offer made jointly by several defendants to a specific plaintiff may be sufficient to trigger section 998 penalties where the defendants are jointly and severally liable. [Citation.] However, in post-Proposition 51 cases, where each defendant is only jointly liable for the plaintiff's economic damages but severally liable for noneconomic damages in proportion to that defendant's degree of wrongdoing [citation], the validity of such an offer is questionable." (*Taing, supra,* 9 Cal.App.4th at pp. 583-584.)

In reversing the trial court's award of prejudgment interest and expert witness costs, the court in *Taing* held that in light of the evolution of comparative negligence law and Proposition 51, "if a plaintiff elects to submit a section 998 offer in cases involving multiple defendants, the offer to any defendant against whom the plaintiff seeks to extract penalties for nonacceptance must be sufficiently specific to permit that individual defendant to determine the exact amount plaintiff is seeking from him or her. Taing's offer in this case did not do so." (*Taing, supra,* 9 Cal.App.4th at pp. 585-586.)

In *Bihun, supra,* 13 Cal.App.4th 976, 998, the trial court upheld the validity of an unapportioned section 998 offer in the amount of $1.2 million made by the plaintiff to AT&T and several defendant employees in a sexual harassment case. After the jury returned a verdict awarding the plaintiff $1.5 million in compensatory damages and $500,000 in punitive damages, the trial court awarded the plaintiff prejudgment interest under Civil Code section 3291. (*Bihun,* at p. 998.) The *Bihun* court distinguished *Taing* "on the ground *Taing* dealt with the problem of an unapportioned settlement offer to defendants who were not jointly liable for the full amount of the plaintiff's damages. Here, AT&T was jointly liable with its employees on a respondeat superior or vicarious liability theory for the full amount of damages on every cause of action in which AT&T was named as a defendant. . . . Thus, unlike the scaffolding company in *Taing,* AT&T's principal dilemma was liability vel non, not apportionment of damages. As noted above, the fact the settlement offer included causes of action against the employees for which AT&T would not have been liable required an assessment by AT&T of *its* chances of being held *liable* to plaintiff; a different calculation from its assessment of whether it would suffer a damage award in excess of the settlement offer assuming its liability was established. [¶] Even when there is only one defendant or the settlement offer is apportioned among several defendants a defendant must always assess its chances of being found liable to the plaintiff in determining how to respond to a settlement offer. Thus, the unapportioned settlement offer in the present case did not put AT&T in a dilemma not faced by every defendant who receives an offer of settlement under . . . section 998." (*Bihun,* at p. 1001.)

In *Steinfeld, supra,* 50 Cal.App.4th 1542, 1544-1545, the plaintiff sued her physician and his medical group for malpractice, alleging they "'negligently, carelessly, recklessly and unlawfully treated and cared for [the plaintiff] . . . .'" The plaintiff served defendants with an unapportioned section 998 offer for $225,000 which the defendants did not accept. (*Steinfeld,* at p. 1545.) The jury awarded the plaintiff $1,164,400 in damages

against both defendants and the trial court awarded the plaintiff prejudgment interest and expert witness costs. (*Id.* at pp. 1545-1546.) The defendants argued the plaintiff's section 998 offer was invalid because it was made jointly to both defendants "without expressly apportioning the offer between them." (*Steinfeld,* at pp. 1546-1547.) The court held the defendants "were sued as joint tortfeasors for a single act of negligence causing a single injury. In this case, which preceded the adoption of Proposition 51, they faced joint and several liability for respondent's economic and noneconomic damages. Under the reasoning of *Bihun,* the fact that the settlement offer was unapportioned did not place appellants in an untenable position, since if they were liable at all, they were jointly and severally liable." (*Id.* at p. 1549.)

The holdings of these three cases have been well summarized as follows: "In multidefendant cases, the rule barring comparative indemnity claims against a 'good faith' settling defendant [citation] and the Prop[osition] 51 elimination of joint and several liability for noneconomic damages [citations] play a significant role in the determination of each defendant's ultimate liability. Consequently, a plaintiff who makes a § 998 offer to joint defendants having *potentially varying liability* must specify the amount plaintiff seeks from *each defendant.* Otherwise, there is no way to determine whether a subsequent judgment against a particular nonsettling defendant is 'more favorable' than the offer." (Flahavan et al., Cal. Practice Guide: Personal Injury (The Rutter Group 2002) ¶ 4:163.2g, pp. 4-48 to 4-49, first italics added.) "Thus, a lump-sum settlement offer made to several defendants whose liability may be apportioned (i.e., *not* jointly liable) must state [plaintiff's] position as to each defendant's share or percentage of the settlement demand." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2002) ¶ 12:610.2, pp. 12(II)-20 to 12(II)-21.)

IV.  *Was Burch's Unapportioned Section 998 Offer to Defendants Valid?*

The parties agree (1) Burch served an unapportioned section 998 offer jointly to all four defendants, offering to settle the case for $50 million; (2) defendants never accepted Burch's offer; and (3) approximately 10 months later at trial, defendants stipulated to joint and several liability. Was Burch's section 998 offer valid, warranting an award of expert witness costs and prejudgment interest? Based on the following analysis, we conclude it was not.

A.  *We determine the validity of Burch's section 998 offer as of the date it was served and not as of the date of judgment.*

To further the purposes of promoting reasonable settlement under section 998, we must consider the validity of section 998 offers as of the date the

offers are served. In *Taing, supra,* 9 Cal.App.4th 579, 585, the court stated, "While it is correct, as Taing contends, that the efficacy of a section 998 offer is generally determined by hindsight, the hindsight merely measures the amount of the judgment against the amount of the offer. However, from the perspective of the offeree, the offer must be sufficiently specific to permit the individual defendant to evaluate it and make a reasoned decision whether to accept without the additional burden of obtaining the acceptance of codefendants or suffering from their refusal to settle, especially when that refusal may have been unreasonable."

■ Similarly, courts determine the reasonableness of a section 998 offer—that is, whether it was rendered in good faith or was an invalid token offer—as of the time the offer was made. "The reasonableness of [section 998] offers must be made in light of the circumstances existing at the time of the offer [citation] and not by virtue of hindsight." (*Fortman v. Hemco, Inc.* (1989) 211 Cal.App.3d 241, 264 [259 Cal.Rptr. 311].) "An offeree cannot be expected to accept an unreasonable offer. Hence, any subsequent punishment of the offeree for nonacceptance does not further the purpose of section 998, because the offeree would not have acted differently at the time of the offer despite the threat of later punishment. In these circumstances, later punishment of the offeree merely provides a windfall to the offeror and does not encourage settlements." (*Elrod v. Oregon Cummins Diesel, Inc., supra,* 195 Cal.App.3d 692, 698-699.)

■ As of the time Burch served her section 998 offer on defendants, defendants had not stipulated to joint and several liability in the case. Burch argues that defendants' confidential mandatory settlement conference brief dated July 12, 2000, stated, "Defendants are admitting for the purposes of the MSC liability. As to apportionment, such is not being advanced at this time." For policy reasons honoring adherence to the confidentiality of such documents, we do not consider the confidential mandatory settlement conference statement or brief. But even if considered, by its terms, this statement by defendants does not constitute an admission of joint and several liability.

Defendants did not admit joint and several liability until trial—approximately 10 months after Burch served her offer. When Burch served the section 998 offer, defendants had filed answers which contained general denials of the allegations contained in the complaint and several affirmative defenses. Thus, we consider the complaint and defendants' answers as of the date of service of the section 998 offer to objectively determine whether defendants could be found not jointly and severally liable to Burch, if liable at all.

Burch argues we should ignore the fact Westrux was a party to the case at the time of the offer because Westrux is not a party to this appeal. We consider the validity of the offer as of the date it was served. Westrux was a party to the case at that time and was an offeree of the section 998 offer.

Burch further argues that in determining whether her offer was valid, though unapportioned, we should consider defendants' stipulation to joint and several liability at trial. Burch cites *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644 [25 Cal.Rptr.2d 109, 863 P.2d 179] for this proposition. In *Lakin*, our Supreme Court stated in a footnote: "We perceive no significance in the fact that the compensatory damages claimed against defendant trucking company included damages for the conduct of defendant truck driver. If plaintiff had made an undifferentiated settlement offer to both defendants and then had obtained a judgment for which defendants were not jointly liable, an issue of apportionment might arise. [Citation.] The present situation, however, differs in two respects: plaintiff made her offer to only one defendant, and that defendant was either solely liable or jointly and severally liable for the entire judgment." (*Id.* at p. 658, fn. 9.)

Unlike the present case, in *Lakin v. Watkins Associated Industries, supra,* 6 Cal.4th 644, the issue of an unapportioned offer to multiple defendants was not before the court. In *Lakin,* the plaintiff's section 998 offer was served on the defendant truck company only and involved a personal injury action against the truck company and its driver.

B.   *Under the complaint, defendants could have been found not jointly and severally liable to Burch for the full amount of the judgment.*

The complaint includes sweeping allegations of liability under the doctrines of respondeat superior and vicarious liability: "[D]efendants, and each of them, were the agents, servants, employees, successors-in-interest, joint venturers, and assigns, each of the other, and at all times pertinent hereto were acting within the course and scope of their authority as such agents, servants, employees, successors, joint venturers, and assigns." However, unlike *Steinfeld, supra,* 50 Cal.App.4th 1542, 1549, the complaint did not allege "a single act of negligence" but rather alleged several theories of negligence against each defendant within its single negligence cause of action: defendants "were the owners, operators, lessees, and lessors of" the truck; defendants drove the truck "with the knowledge, permission, and consent, each of the other"; and defendants "so negligently, carelessly, recklessly, and unlawfully owned, drove, maintained, operated, entrusted, and controlled their said vehicle so as to cause it to collide with and crash

into the vehicle driven by plaintiff, thereby directly and legally causing the injuries and damages to plaintiff as herein after enumerated."

The complaint suggested Westrux owned the truck that collided into Burch's vehicle— "a certain International truck." Westrux's liability could have been based only on its role as the owner/lessor of the truck in question, and not on Burch's allegations that Westrux had any other liability under the doctrine of respondeat superior or vicarious liability. In that event, and under the permissive user doctrine, Westrux's liability would have been statutorily limited to $15,000 per injury, $30,000 per occurrence, and $5,000 for property damages (Veh. Code, § 17151, subd. (a)) and Westrux would not have been found jointly and severally liable with the other defendants for the full amount of Burch's damages. The theories pleaded in the complaint allowed such findings.

Based on the allegations of the complaint, the trier of fact also could have determined Westrux's culpability was limited to negligent maintenance of the truck that hit Burch's vehicle. Such a scenario gives rise to comparative negligence liability and triggers Proposition 51, whereby a defendant's liability for noneconomic damages based on principles of comparative fault "shall be several only and shall not be joint." (Civ. Code, § 1431.2, subd. (a).) Burch argues that "other than a boilerplate reference in its answer, CHOC never raised the defense of Prop 51. *Prop. 51 played no role whatsoever in the underlying litigation.*" The "boilerplate reference" referred to was the affirmative defense contained in defendants' answers to the complaint which states: "Liability for the amount of non-economic damages should be allocated to this answering defendant in direct proportion of their percentages of fault, if any, according to California *Civil Code*, Section 1431 et seq." This affirmative defense had raised Proposition 51 as an issue as of the date Burch served her section 998 offer.

The complaint alleged facts supporting an award of noneconomic damages, and the jury awarded Burch noneconomic damages. The complaint alleged, "As a direct and legal result of the acts and omissions of the defendants, and each of them, plaintiff . . . suffered . . . severe fright, shock, pain, discomfort, and anxiety." In *Bihun, supra,* 13 Cal.App.4th 976, the employer defendant was either liable jointly and severally, or not liable at all. In contrast, under the complaint here, the trier of fact could have concluded all defendants were liable, but not jointly and severally liable to Burch.

Burch contends "[i]f *any* possibility, no matter how remote, of a several judgment, even if contrary to the pleadings and the ultimate judgment,

invalidates a [Code of Civil Procedure section] 998 offer, then section[] 998 and [Civil Code section] 3291 are dead because such a *possibility* exists in all multidefendant cases." We disagree. To avoid a finding that her offer was invalid, Burch could have served separate offers on each defendant or served a single but apportioned offer on all defendants. Weil and Brown, California Practice Guide: Civil Procedure Before Trial, *supra,* paragraph 12:611.3, page 12(II)-21, recommends: "Avoid the uncertainty. Serve separate demands on *each* defendant."

Relying on several out-of-state cases and *Santantonio v. Westinghouse Broadcasting Co., supra,* 25 Cal.App.4th 102, Burch contends there was a " 'unity of interest' " among defendants because they "filed a joint answer, had the same lawyer, filed joint pleadings, jointly referred to themselves as 'CHOC,' made a joint offer to the plaintiff, and were 'lumped together in the complaint.' " But Westrux filed its own answer to the complaint separate from the other defendants. Most significantly, defendants were sued on theories by which they could be found liable, but not jointly and severally liable for the full amount of the judgment. *Santantonio v. Westinghouse Broadcasting Co.* is distinguishable because it involved an apportioned offer to multiple *plaintiffs.*

Based on this analysis, we conclude the trial court properly ruled that Burch's section 998 offer was not valid and denied recovery of prejudgment interest and expert witness costs. We therefore need not decide whether Burch's section 998 offer was invalid because it was "conditional" or whether the judgment awarded to Burch was more favorable than the section 998 offer.

### DISPOSITION

The postjudgment order is affirmed. CHOC Thrift Stores and CHOC shall recover their costs on appeal.

Sills, P. J., and Bedsworth, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 10, 2003.