Filed 2/20/15  Cosco Fire Protection v. Siry investments CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| COSCO FIRE PROTECTION, INC., | D062427 |
| Plaintiff, Cross-defendant and Appellant, | |
| v. | (Super. Ct. No. 37-2008-00097567-CU-BC-CTL) |
| SIRY INVESTMENTS et al., | |
| Defendants and Appellants; | |
| SIRY INVESTMENTS, L.P., | |
| Cross-complainant and Appellant. | |
| SIRY INVESTMENTS, L.P. et al., | |
| Plaintiffs and Appellants; | |
| D'AMATO CONVERSANO, INC., | (Super. Ct. No. 37-2009-00095017-CU-BC-CTL) |
| Defendant and Appellant; | |
| SALEHI ENGINEERING CORPORATION, | |
| Defendant and Appellant. | |

APPEALS from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge. Affirmed.

Ropers Majeski Kohn & Bentley, Stephan A. Barber, Enedina S. Cardenas and Alan J. Hart for Plaintiff, Cross-defendant and Appellant Cosco Fire Protection, Inc.

Wilson, Elser, Moskowitz, Edelman & Dicker, Robert Cooper and Gregory D. Hagen for Defendants and Appellants Siry Investments et al., for Cross-complainant and Appellant Siry Investments, L.P., and for Plaintiffs and Appellants Siry Investments, L.P. et al.

Byron & Edwards, Michael M. Edwards and Craig A. Weeber for Defendant and Appellant D'Amato Conversano, Inc.

Garcia & Birge and Marian H. Birge for Defendant and Appellant Salehi Engineering Corporation.

Plaintiffs Siry Investments, L.P., and 1835 Columbia Street, L.P. (together Siry) appeal a judgment after the trial court granted the motion of defendant Salehi Engineering Corporation, formerly known as Salehi & Salehi, Inc. (Salehi), for contractual attorney fees and costs after it prevailed in Siry's action against it. On appeal, Siry contends the trial court erred by: (1) awarding Salehi any attorney fees because Salehi did not submit sufficient admissible evidence in support of its motion; and (2) not apportioning Salehi's attorney fees among the three causes of action alleged against it.

In its cross-appeal, plaintiff and cross-defendant Cosco Fire Protection, Inc., (Cosco) appeals a judgment against Siry after the trial court denied its motion for contractual attorney fees and costs after it prevailed in its action against Siry. On appeal,

2

Cosco contends the trial court erred by: (1) not presenting its special instructions and questions to the jury; and (2) finding the terms and conditions in the document that included an attorney fee provision were not incorporated into its written contracts with Siry.

In its cross-appeal, defendant D'Amato Conversano, Inc. (DCI) appeals a judgment against Siry after the trial court granted in part Siry's motion to tax DCI's costs. The court denied DCI's request to recover from Siry its costs, including expert witness fees, incurred after it made a settlement offer pursuant to Code of Civil Procedure[1] section 998. On appeal, DCI contends the trial court erred by finding its settlement offer to Siry was not a valid offer under section 998.

FACTUAL AND PROCEDURAL BACKGROUND

In 2008, Cosco filed an action (Super. Ct. San Diego County, 2008, No. 37-2008-00097567-CU-BC-CTL) against Siry Investments, L.P., and Moe Siry for nonpayment of invoices in the total amount of $48,535.64 for its design, materials, and labor in installing fire sprinklers and fire alarm and detection equipment in connection with the construction (or reconstruction and remodeling) of the Bayview Motel, now known as the Porto Vista Hotel (Project). Cosco alleged causes of action for breach of two written contracts. In turn, Siry filed a cross-complaint against Cosco, alleging causes of action for breach of contract, negligent misrepresentation, and negligence.

---

1      All statutory references are to the Code of Civil Procedure unless otherwise specified.

3

Siry then filed a separate action (Super. Ct. San Diego County, 2009, No. 37-2009-00095017-CU-BC-CTL) against DCI, Salehi, and other defendants, alleging breach of contract and negligence causes of action relating to the Project. DCI provided structural engineering services to the architects for the Project. Salehi provided mechanical, plumbing, and electrical design engineering services to Siry for the Project. Siry alleged DCI, Salehi, and the other defendants wrongfully discontinued or delayed work on the Project and provided services that were untimely and/or below the standard of care in the industry that caused damages to Siry in excess of $5,000,000. The trial court subsequently granted Siry's motion to consolidate the two actions (i.e., Case Nos. 37-2008-00097567-CU-BC-CTL and 37-2009-00095017-CU-BC-CTL).

In late January 2012, a jury trial began on the consolidated actions and lasted for about six weeks. On March 8, after deliberating for about one day, the jury returned verdicts against Siry and in favor of Salehi, Cosco, and DCI. On Cosco's claim against Siry Investments, L.P., the jury awarded it $51,324.64 in damages. On April 16, the trial court entered judgment on the jury's verdicts.

As discussed in greater detail below, Salehi and Cosco filed separate motions for contractual attorney fees and costs, and DCI filed a memorandum of costs, seeking recovery of its postsettlement offer costs, including expert witness fees. Siry opposed the attorney fee motions and moved to tax DCI's costs. The trial court issued minute orders granting Salehi's motion in part, denying Cosco's motion, and granting in part Siry's motion to tax DCI's costs.

4

On August 7, the trial court entered an amended judgment against Siry, reflecting its rulings on the posttrial motions. Siry timely filed a notice of appeal challenging the judgment and posttrial rulings in favor of Cosco and DCI.[2] DCI timely filed a notice of cross-appeal challenging the court's order granting in part Siry's motion to tax its costs. Cosco timely filed a notice of cross-appeal challenging the court's order denying its motion for attorney fees and costs. Finally, Siry timely filed a notice of appeal challenging the court's order granting Salehi's motion for attorney fees and costs.

DISCUSSION

*SIRY'S APPEAL*

I

*Awards of Contractual Attorney Fees and Costs Generally*

" ' " 'An order granting or denying an award of attorney fees is generally reviewed under an abuse of discretion standard of review; however, the "determination of whether the criteria for an award of attorney fees and costs have been met is a question of law." [Citations.]' " ' [Citation.] An issue of law concerning entitlement to attorney fees is reviewed de novo." (*Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378.) Likewise, we apply de novo review and exercise our independent judgment in interpreting a contract if there is no disputed extrinsic evidence on its interpretation. (*Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328, 1336.)

---

[2] Siry apparently has since abandoned that appeal.

5

"Code of Civil Procedure section 1021 provides the basic right to an award of attorney fees." (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341 (*Xuereb*).) Section 1021 provides that, in general, "the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." However, "[t]here is nothing in [section 1021] that limits its application to contract actions alone. It is quite clear . . . that parties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." (*Xuereb*, at p. 1341.)

Furthermore, Civil Code section 1717 provides for reciprocity of contractual attorney fee provisions, stating:

> "(a)  In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.  [¶]  Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract . . . . [¶] . . . [¶]

> "(b)(1)  The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section . . . .  [T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section."

"[Civil Code] section 1717 makes an otherwise unilateral right reciprocal, thereby ensuring mutuality of remedy, . . . *when a person sued on a contract* containing a provision for attorney fees to the prevailing party *defends the litigation 'by successfully*

6

*arguing* the inapplicability, invalidity, unenforceability, or *nonexistence* of the same contract.' [Citation.] . . . [I]t has been consistently held that *when a party litigant prevails in an action on a contract by establishing that the contract is* invalid, inapplicable, unenforceable*, or *nonexistent*, section 1717 permits that party's recovery of attorney fees* whenever the opposing parties would have been entitled to attorney fees under the contract had they prevailed." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 611, quoting *North Associates v. Bell* (1986) 184 Cal.App.3d 860, 865; italics added.)

The limited purpose of Civil Code section 1717 is to establish mutuality of remedy and is triggered when there is a unilateral contractual provision that provides attorney fees are available to only one of the contracting parties. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 870.) Civil Code section 1717 is not an independent statutory basis for recovering attorney fees (*Chelios v. Kaye* (1990) 219 Cal.App.3d 75, 79), but instead "simply transforms a unilateral contractual right into a reciprocal right." (*Hambrose Reserve, Ltd. v. Faitz* (1992) 9 Cal.App.4th 129, 132.)

"When a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract contains a provision for attorney fees, section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims." (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109.)

"Civil Code section 1717 has a limited application. It covers *only* contract actions, where the theory of the case is breach of contract, and where the contract sued upon itself

7

specifically provides for an award of attorney fees incurred to enforce *that* contract."
(*Xuereb*, *supra*, 3 Cal.App.4th at p. 1342.)

"To achieve its goal, [Civil Code section 1717] generally must apply in favor of the party prevailing on a contract claim whenever that party would have been liable under the contract for attorney fees had the other party prevailed." (*Hsu v. Abbara*, *supra*, 9 Cal.4th at pp. 870-871.) *Hsu* noted that in 1987 the Legislature amended Civil Code section 1717 to replace "the term 'prevailing party' with the term 'party prevailing on the contract,' evidently to emphasize that *the determination of prevailing party for purposes of contractual attorney fees was to be made without reference to the success or failure of noncontract claims*." (*Hsu*, at pp. 873-874, italics added.) Accordingly, *Hsu* concluded: "*When a defendant obtains a simple, unqualified victory by defeating the only contract claim in the action, [Civil Code] section 1717 entitles the successful defendant to recover reasonable attorney fees incurred in defense of that claim* if the contract contained a provision for attorney fees. The trial court has no discretion to deny attorney fees to the defendant in this situation by finding that there was no party prevailing on the contract." (*Hsu*, at p. 877, italics added.) Alternatively stated, "when a defendant defeats recovery by the plaintiff on the only contract claim in the action, the defendant is the party prevailing on the contract under [Civil Code] section 1717 *as a matter of law*." (*Hsu*, at p. 876, italics added.)

A trial court is not required to apportion attorney fees between contract claims and noncontract claims when it reasonably finds all claims in the case were inextricably intertwined. (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111.)

8

"Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129-130.)

Consistent with the purpose of Civil Code section 1717, a trial court "has broad authority to determine the amount of a reasonable fee." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*).) "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' " (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) Although a trial court's fee-setting inquiry ordinarily begins with the "lodestar" (i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate), a trial court may base its determination on other factors. (*PLCM Group,* at pp. 1095-1096.) "The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623-624, quoted with approval in *PLCM Group,* at p. 1096.)

9

II

*Sufficient Evidence to Support Award of Attorney Fees to Salehi*

Siry contends the trial court erred in awarding Salehi *any* attorney fees because Salehi did not submit sufficient admissible evidence in support of its motion for attorney fees and costs.

A

On May 22, 2012, Salehi filed a posttrial motion for an award of attorney fees and costs pursuant to contract.  Salehi based its motion on the written proposal, on which it was unsuccessfully sued by Siry, that contained an attorney fee provision (paragraph 7) stating:

> "IN THE EVENT OF A DISPUTE BETWEEN THE PARTIES
> RELATING TO THE INTERPRETATION OR ENFORCEMENT
> OF THE PROVISION [sic] OF THIS AGREEMENT, THEN THE
> PREVAILING PARTY IN DISPUTE SHALL BE ENTITLED TO
> IT'S [sic] REASONABLE COSTS AND ATTORNEY'S FEES."[3]

Citing section 1021 and Civil Code section 1717, Salehi, as the prevailing party, sought a total award of $369,869.85 for attorney fees, statutory costs, and nonstatutory costs. Salehi sought $347,820.00 for attorney fees based on 581.4 hours worked by attorney Silvia Garcia from July 29, 2009, through September 8, 2011, and 578 hours worked by attorney Marian Birge from September 2011 through and after the trial.  In support of its motion, Salehi submitted the declaration of Birge, who stated she had been Garcia's

---

[3]     Siry does not appear to contend on appeal that the attorney fee provision set forth in the written proposal is unenforceable by Salehi.

partner for 12 years. Garcia initially represented Salehi as lead counsel from July 2009 until September 2011, when Birge took over the case because Garcia's cancer treatment prevented her from performing most of the functions of her job. Garcia eventually died on April 17, 2012. Birge took over as lead counsel and began preparing for trial in November 2011. In so doing, she reviewed voluminous files and discovery responses and read 19 deposition transcripts. She stated Siry filed a first amended complaint in September 2010 that added a breach of written contract claim to the original complaint's professional negligence and breach of oral contract claims. Birge declared that "the same factual allegations formed the underpinnings of both [of Siry's] contract claims and the negligence claim." She stated she "believe[d] all the work performed before September 2010 was reasonably necessary and would have been accomplished had Ms. Garcia and/or I been defending Siry's breach of written contract claim alone." She further stated:

> "Siry's oral and written contract claims and the professional negligence claims are based on identical factual allegations of defective work, delaying, and abandoning work in violation of professional standards. I find the claims to be so entwined as to be analogous. I am unable to logically separate work done for an express purpose of defending the breach of written contract claim from the original oral contract claim. Similarly, I am unable to logically separate the negligence claim from the contract claim, because the underlying factual allegations go to all the causes of action upon which plaintiff failed to prevail."

Birge stated that her and Garcia's billing rate was $300 per hour, consistent with hourly rates of other San Diego attorneys with similar experience and qualifications. Birge attached to her declaration copies of Garcia's hours spent representing Salehi in this matter, which totaled 581.4 hours. Birge also attached to her declaration copies of her

11

own hours spent representing Salehi in this matter, which totaled 578 hours.  She also attached a copy of the written proposal on which Siry based its breach of written contract claim.  Birge declared the total amount of attorney fees for which Salehi sought reimbursement was $347,820.00, total statutory costs of $17,461.35, and total nonstatutory costs of $13,571.04, subject to supplementation at the time of the hearing on Salehi's motion.

Siry opposed Salehi's attorney fee motion, arguing the written proposal's attorney fee provision was ambiguous and inapplicable and the attorneys' time entries submitted by Salehi were inadmissible and excessive.  Siry argued Birge testified at her deposition that she prepared Garcia's time entries by reviewing Garcia's computer records, but did not know the manner in which Garcia entered those records.  Siry also noted that Birge testified she did not know whether Garcia's time entries had been submitted to Salehi as a bill and that Salehi had paid only $25,000 for their firm's work on the case.  Siry also argued there were some inaccuracies and inconsistencies in Garcia's time entries.  Siry argued that because Garcia's time entries were wholly unreliable, the trial court should reject them in their entirety or at least greatly reduce them.

In its reply, Salehi argued the attorney fees it requested were reasonable and necessary.  It also argued there was no need for the trial court to apportion those fees between work done on the contract claims and the negligence claim because there were common issues.  In support of its reply, Salehi submitted a second declaration of Birge in which she stated she worked diligently in preparing for the lengthy trial.  Salehi also

12

requested additional fees and costs totaling $2,670.00 incurred since the filing of its motion.

At the July 27, 2012, hearing on Salehi's attorney fee motion, Siry's counsel argued that although Birge had conceded less than 10 hours of work was excessive, he believed the hours were excessive by a factor of four to 10 times as that conceded by Birge. He also argued Birge admitted that some of her pretrial work was duplicative of work done by Garcia. In response, Salehi's counsel (Birge) stated she acknowledged a small sample of time entries did not appear to be logical and/or had the wrong dates on them. Nevertheless, she argued those flaws should not result in a finding that every time entry was in error. The trial court stated:

> "The Court remains convinced that the total of $347,820 is well within the ballpark of what is reasonable and necessary, given a whole host of factors, not the least of which was the complexity of this litigation; the years that multiple lawyers[,] four of whom splendidly represented their clients while trying this case in front of the jury in this court several months ago; and the heavy litigation that all sides engaged in for a period of years, dating back to [2008].
>
> " . . . [T]his Court tries my best, based upon my years of experience as a trial lawyer to evaluate these types of issues in the real world. And in the real world lawyers get sick. Lawyers die. Unfortunately this happened with Ms. Birge.
>
> "Services were performed. And in part she had to climb an extremely steep learning curve. Her client Salehi could have chose[n] to go in a different direction but they chose not to [do] so. They remained with Ms. Birge's firm. The fact that Ms. Birge and Ms. Garcia were partners for, I think I saw 15 years, though she didn't have knowledge of every entry, or every service performed by Ms. Garcia in this case, they were partners.
>
> "The inference that the court draws from that many years of working together is that Ms. Garcia was at least familiar with the way her

13

partner did business, generally the record keeping. Generally the way bills were prepared and sent or not sent to clients, such as Salehi.

"The fact that Salehi paid very little of this bill is of little relevancy to the court's perception of whether the services that were performed were reasonable and necessary.

"The court acknowledges that there [were] some inaccuracies in the bills that Ms. Birge pointed out or acknowledged, but the court has offset what appears to be a relatively small percentage of inaccuracies by denying the supplemental request for fees by Salehi.

"The Court confirms the tentative [ruling] as the order of the Court."

On July 27, the trial court issued a minute order granting in part and denying in part Salehi's motion for attorney fees and costs. Citing the written proposal's attorney fee provision, the court stated:

"[Siry's] breach of contract claim was based upon specific allegations of professional negligence (untimely performance, failure to meet standards of care, design errors and omissions, discontinuation and lack of professional performance[).] The claims relate to the specific services provided under the contract.

" . . . Under Civil Code section 1717, there is [a] presumption that the provision for attorney fees applies to the entire contract. . . . [¶] . . . [¶]

"Finally, the Court has held that a prevailing party is entitled to attorneys' fees under a contract even in circumstances where the finder of fact finds that no contract was formed. [Citation.]

"The Court finds that 1) Ms. Birge's hourly rate of $300 is reasonable; 2) the nature and extent of the services performed by Ms. Birge and Ms. Garcia were reasonable and necessary, particularly given Ms. Birge's explanation in her May 25, 2012[,] declaration . . . ; 3) though not perfect, the corroboration of the services performed by Ms. Birge and Ms. Garcia is reasonable; and 4) Salehi's request for fees in the amount of $347,820 is granted; 5) Salehi's request for additional fees in its Reply is denied."

14

B

Siry asserts the trial court erred by awarding *any* attorney fees and costs to Salehi because it did not present sufficient admissible evidence in support of its motion. Siry argues Birge's two declarations did not provide an adequate foundation under Evidence Code section 1271 for the admission of Garcia's time entries.

Evidence Code section 1271 provides:

> "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if:
>
> "(a) The writing was made in the regular course of a business;
>
> "(b) The writing was made at or near the time of the act, condition, or event;
>
> "(c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and
>
> "(d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

In opposing Salehi's attorney fee motion, Siry objected to Exhibit 1 to Birge's first declaration, citing a lack of foundation, no personal knowledge, and hearsay (i.e., "Evidence Code § 1200, et seq."). Siry argued Birge admitted at her deposition that she had no knowledge of how or when Garcia's time entries were created or whether the hours billed were accurate. In granting in part Salehi's motion for attorney fees, the trial court expressly overruled Siry's objections to Birge's declarations. In so doing, the court implicitly overruled Siry's specific objections based on Evidence Code section 1200 et seq. (e.g., Evid. Code, § 1271) and a lack of foundation.

15

We conclude the trial court properly exercised its discretion by overruling Siry's objections to Birge's declaration. As discussed above, Birge's declarations showed she had been Garcia's partner for 12 years. Birge stated Garcia initially represented Salehi as lead counsel from July 2009 until September 2011, when Birge took over the case because Garcia's cancer treatment prevented her from performing most of the functions of her job. Prior to September 2011, Birge had performed a "few tasks" relating to the Salehi litigation (e.g., defending a deposition, attending a deposition and mediation, drafting or editing some motions and discovery). Garcia died on April 17, 2012 (i.e., about one month after the trial ended). Birge attached as Exhibit 1 to her declaration copies of Garcia's hours spent representing Salehi in this matter, which totaled 581.4 hours. Birge declared those time entries were true and correct copies of Garcia's hours spent in representing Salehi in the instant litigation. Birge declared the attorney fees and costs sought by Salehi "reflect[ed] actual and reasonable fees and costs incurred by my firm . . . ." In opposing Salehi's motion, Siry argued Birge testified at her deposition that she created Exhibit 1 by reviewing Garcia's "hard" (i.e., paper) files and computer records. Siry attached excerpts from Birge's deposition testimony. At her deposition, Birge testified that to locate Garcia's billing records she went into Garcia's computer and also reviewed the Salehi files, looking for invoices, and found them. Based on that and other evidence in the record, the trial court could reasonably infer that Birge had sufficient knowledge of Garcia and her billing records and practices to support admission of Garcia's time entries in support of Salehi's motion for attorney fees.

16

Contrary to Siry's assertion, the court could reasonably infer from Birge's declarations, deposition testimony, and the detailed billing records she found in Garcia's files and computer that Garcia's time entries were made in the regular course of Garcia's business, at or near the time when her services were performed, and were adequately identified by Birge to indicate their trustworthiness under Evidence Code section 1271. Because Garcia died before Salehi filed its motion for attorney fees, she was unable to personally confirm that all of the Evidence Code section 1271 requirements were satisfied. Nevertheless, as the trial court noted, attorneys do become ill or die and may be unavailable to verify that their billing records satisfy the requirements for the business records exception to the hearsay rule. In those circumstances, a trial court may reasonably rely on the declarations and/or testimony of attorneys and other persons regarding the unavailable attorney's billing and/or business practices in determining whether the billing records should be admitted into evidence in support of a motion for attorney fees. Although, as Siry asserts, Birge did not have personal knowledge of exactly how and when Garcia entered her time for services rendered to Salehi, the court could reasonably infer from her 12-year partnership with Garcia, as well as from the nature and content of the time entries themselves, that they were made in the regular course of Garcia's business at or near the time she rendered those services and were trustworthy. The court did not abuse its discretion by admitting Garcia's time entries into evidence in support of Salehi's motion for attorney fees and costs.

Contrary to Siry's assertion, the fact that some of Garcia's periodic time entry listings or invoices were denoted "this is not a bill" does not show her records were

17

untrustworthy or that Salehi had not incurred the attorney fees it sought pursuant to its motion. Likewise, contrary to Siry's assertion, the fact some of Garcia's time entries contained erroneous date descriptions (presumably due to typographical errors) or other inaccuracies does not necessarily prove *all* of Garcia's time entries were untrustworthy. Rather, the trial court acted within its reasonable discretion by reducing Salehi's requested fees by the $2,670 amount it sought as supplemental fees incurred after filing its initial motion to, in effect, account for certain mistakes or inaccuracies in Garcia's (and/or Birge's) time entries. Siry has not carried its burden on appeal to persuade us the trial court abused its discretion by not excluding Garcia's time entries as untrustworthy and by not denying *all* of the attorney fees requested by Salehi. None of the cases or other authorities cited by Siry (e.g., *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315) are apposite to this case or otherwise persuade us to reach a contrary conclusion.

To the extent there may have been minor deficiencies in the evidence submitted in support of Salehi's motion for attorney fees, the trial court could reasonably rely on its direct observation of Garcia and Birge's services in this case, as well as its own expertise and personal experience in the legal system, to provide additional support for its findings that the nature and extent of the services performed by Garcia and Birge were reasonable and necessary and the fees sought by Salehi (i.e., $347,820) were reasonable. (*PLCM Group*, *supra*, 22 Cal.4th at p. 1095-1096; *Serrano v. Priest*, *supra*, 20 Cal.3d at p. 49; *Melnyk v. Robledo*, *supra*, 64 Cal.App.3d at pp. 623-624.)

18

## III

### *Apportionment of Attorney Fees*

Siry contends the trial court abused its discretion by not apportioning Salehi's attorney fees between the contract causes of action and the tort cause of action. It argues Salehi cannot recover fees incurred before September 2010 when Siry amended its complaint to add a cause of action for breach of written contract to the original causes of action for breach of oral contract and professional negligence. It further argues the court was required to apportion post-September 2010 fees between the written contract and other two causes of action.

As Siry asserts, the record shows it did not amend its complaint until September 2010 to add a cause of action for breach of written contract. However, as Salehi asserted below and the trial court found, the breach of written contract claim involved issues common to Siry's original claims for breach of oral contract and professional negligence.

Civil Code section 1717's reciprocity provision covers only contract actions (i.e., for breach of contract) where the contract specifically provides for an award of attorney fees incurred to enforce that contract. (*Xuereb*, *supra*, 3 Cal.App.4th at p. 1342.) Nevertheless, the parties to a contract may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between them, including both tort and contract causes of actions. (§ 1021; *Xuereb*, at p. 1341.)

In this case, the written proposal provided that in the event of a dispute between the parties "relating to the interpretation or enforcement of the provision [sic] of this agreement," the prevailing party is entitled to reasonable attorney fees and costs.

19

Although Salehi suggests we interpret that provision broadly as covering all disputes "relating to" or "arising out of" the contract, we decline to do so. On its face, the express language of that contract provision limits recovery of attorney fees to actions relating to interpretation or enforcement of the agreement, which is much narrower than actions relating to or arising out of the agreement. For purposes of this opinion, we presume Siry correctly asserts the written proposal's attorney fee provision expressly covered only its cause of action for breach of written contract and not its causes of action for breach of oral contract and professional negligence.

Nevertheless, we must make all presumptions and reasonable inferences to support the trial court's order granting in part Salehi's motion for attorney fees and costs. (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970; *Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Absent express findings to the contrary, "[w]e imply all findings necessary to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings." (*In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928.) "The burden of affirmatively demonstrating error is on the appellant." (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.)

In this case, although the trial court made certain statements at the hearing on Salehi's motion and in its minute order granting in part that motion, "we may not impeach the trial court's ultimate judgment with its remarks at the hearing on the petition or in announcing its ruling from the bench." (*Smith v. City of Napa* (2004) 120 Cal.App.4th

20

194, 199.) Rather, we make all presumptions and reasonable inferences to support the court's order granting in part Salehi's attorney fee motion. In so doing, we infer the court found there were common issues between the breach of written contract claim and other claims, those causes of action were inextricably intertwined, and, based on those findings, exercised its discretion to not apportion Salehi's attorney fees between the breach of written contract claim and other claims. The record supports that inference. In its reply papers, Salehi argued there was no need for the trial court to apportion its requested attorney fees between work done on the contract claims and the negligence claim because there were common issues. By granting Salehi almost all of its requested attorney fees without apportioning them between the written contract claim and other claims, we infer the court impliedly found there were common issues among the claims, which were inextricably intertwined, and therefore no apportionment of fees was practical or warranted. As Salehi asserts, Siry's three causes of action against Salehi alleged that it wrongfully discontinued and/or delayed work on the Project and provided labor, material, and services that were untimely and/or did not meet the standard of care in the industry. Birge's first declaration stated the "same factual allegations formed the underpinnings of both contract claims and the negligence claim" and those claims were "based on identical factual allegations of defective work, delaying, and abandoning work in violation of professional standards." Birge stated she found "the claims to be so entwined as to be analogous" and she was "unable to logically separate work done for an express purpose of defending the breach of written contract claim from the original" oral contract and

21

negligence claims.  Therefore, the trial court reasonably found there were common issues among the three claims and they were inextricably intertwined.[4]

As discussed above, a trial court is not required to apportion attorney fees between contract claims and noncontract claims when it reasonably finds all claims in the case were inextricably intertwined.  (*Abdallah v. United Savings Bank*, *supra*, 43 Cal.App.4th at p. 1111.)  Furthermore, attorney fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed.  (*Reynolds Metals Co. v. Alperson*, *supra*, 25 Cal.3d at pp. 129-130.)  By impliedly finding all three causes of action involved common issues and were inextricably intertwined as to make apportionment impractical or unwarranted, the trial court reasonably exercised its discretion by not apportioning Salehi's attorney fees between the written contract claim and the other claims and instead awarding Salehi almost all of the fees it requested pursuant to the written proposal's attorney fee provision.  (*Abdallah*, at p. 1111; *Reynolds Metals Co.*, at pp. 129-130; *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1604 [trial court has discretion whether and/or how to apportion attorney fees among claims]; *Erickson v. R.E.M. Concepts, Inc.* (2005) 126 Cal.App.4th 1073, 1085-1086 [same].)  We conclude the trial court did not abuse its discretion by awarding Salehi $347,820 in attorney fees.  Siry has not carried its burden on appeal to show otherwise.

---

[4]	Contrary to Siry's assertion, the record does not show Salehi misled the trial court by asserting the court did not have any discretion to apportion its requested attorney fees between the written contract claim and other claims.

Contrary to Siry's assertion, the record supports a reasonable inference that the trial court did, in fact, exercise its discretion by deciding not to apportion Salehi's attorney fees. (Cf. *Contractors Labor Pool, Inc. v. Westway Contractors, Inc.* (1997) 53 Cal.App.4th 152, 168; *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 629.) Furthermore, Siry has not shown the court abused its discretion by awarding Salehi its attorney fees incurred before September 2010 when Siry amended its complaint to add the cause of action for breach of written contract. Assuming arguendo Salehi may not have been entitled to attorney fees under the written proposal's attorney fee provision if Siry had not alleged at any time a cause of action for breach of written contract (i.e., the written proposal), the trial court could reasonably find that all work done by Salehi's attorneys before Siry's September 2010 amendment adding the breach of written contract claim would nevertheless have been required to be done to defend the written contract claim. Alternatively stated, the court could reasonably find that had Siry alleged only a breach of written contract claim, Salehi's attorneys nevertheless would have performed the same work to defend that claim as it would have to defend Siry's breach of oral contract and professional negligence claims. Therefore, Siry does not show the court abused its discretion by not apportioning Salehi's fees between work done before September 2010 and after September 2010.

IV

*Attorney Fees and Costs Incurred on Appeal*

Salehi asserts it is also entitled to an award of attorney fees and costs incurred on appeal pursuant to the written proposal's attorney fee provision. Based on our affirmance

23

of the trial court's order granting in part Salehi's motion for attorney fees, we conclude Salehi is the prevailing party on appeal. Accordingly, after issuance of the remittitur in this case, the trial court should exercise its discretion to award Salehi those reasonable attorney fees and costs incurred on appeal that it may request in a promptly filed motion. (*Harbour Landing-Dolfann, Ltd. v. Anderson* (1996) 48 Cal.App.4th 260, 263-265.)

V

*Salehi's Request for Sanctions*

Salehi requests that we impose sanctions on Siry for filing a frivolous appeal. Based on our consideration of this appeal, we decline to impose sanctions on Siry. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-650.)

*COSCO'S CROSS-APPEAL*

VI

*Special Jury Instructions and Verdict Form*

Cosco contends the trial court erred by denying its motion for contractual attorney fees and costs after it prevailed in its action against Siry. Cosco asserts the trial court erred by not submitting its special instructions and verdict form questions to the jury.

A

During trial, Cosco filed a brief arguing that its document setting forth its general terms and conditions (GTCs) was incorporated into its contracts with Siry. Cosco requested that the trial court give the jury two special instructions on the incorporation of documents into a contract and then give the jury its proposed special verdict, or "special findings," form asking the jury to decide the question of whether Cosco's GTCs were

24

incorporated into its contracts with Siry.[5]  Cosco's proposed form for "special findings" would ask the jury to decide whether Cosco's GTCs were included within its two contracts with Siry.

The trial court denied Cosco's requests for special jury instructions and special findings by the jury on the issue of whether its GTCs were incorporated into its contracts with Siry.  The court stated:

> "Cosco's proposed special findings verdict goes beyond asking the jury to make findings on elements but rather to adjudicate what almost appear to be triable issues of material fact.  And in doing so, they appear to asking the jury to put more weight on this factual dispute than the countless numbers of other contested issues of fact that exist in this case.  I'm just not persuaded that that is fair to the countless numbers of other facts that are at issue between the other parties and, specifically in this case, to Siry's theory of the case.  It seems to slant the playing field in favor of Cosco's theory, and I'm just not comfortable [doing that]."

The court subsequently stated:

---

[5]     The first requested special instruction stated: "[Cosco] contends that its General Terms and Conditions were a part of the fire alarm and fire protection contracts between Cosco and [Siry].  Siry denies that Cosco's General Terms and Conditions are a part of these contracts. [¶] The law permits parties to incorporate by reference into their contract the terms of another document.  The General Terms and Conditions are a part of these contracts if you find that: [¶] (1) The reference to the General Terms and Conditions is clear and unequivocal; [¶] (2) The reference to the General Terms and Conditions is called to the attention of the other party or the other party is guided to the General Terms and Conditions; and [¶] (3) The terms of the incorporated document are known or easily available to the contracting parties."  Cosco's second special instruction stated in relevant part: "Cosco also claims that its General Terms and Conditions are a part of the contracts between Cosco and Siry.  Siry denies that Cosco's General Terms and Conditions are a part of the contracts.  You will decide whether Cosco's General Terms and Conditions are a part of the contracts between Cosco and Siry in accordance with instructions that I will give to you.  During your deliberations, you will be asked to answer questions regarding Cosco's General Terms and Conditions and whether they are a part of the contracts."

25

"The Court agrees with Cosco's argument that, depending upon the verdict, those [special] findings may be helpful, if not very helpful, in evaluating post trial motions. One of the arguments made by Cosco's counsel is, depending upon [the] jury's findings in the contract claim, the existence or absence of terms and conditions may entitle or not the prevailing party to be awarded their attorneys fees. [¶] However, the Court is not persuaded that the findings Cosco is asking the jury to make are necessary for judgment to be entered."

After the jury returned its verdict in favor of Cosco, Cosco filed a motion for contractual attorney fees and costs, arguing its GTCs were incorporated into its contracts with Siry and the GTCs contained an attorney fees provision. Cosco cited language from its contracts that stated:

"This quote is valid for 30 days and is subject to [Cosco's] general terms and conditions. Please do not hesitate to call me at 858-444-2000 should you have any questions regarding this or any other project."

Cosco also cited language from its GTCs that stated:

"PAYMENT. . . . Purchaser shall pay all attorney's fees incurred in the collection of past due accounts."

Siry opposed Cosco's motion for attorney fees and costs, arguing Cosco's GTCs were not incorporated by reference into its contracts with Cosco.

At the hearing on Cosco's attorney fee motion, Cosco confirmed its GTCs were set forth on a separate document and were not on the back of the contracts. Although Cosco argued it was its custom and practice to give the GTCs document to customers, Siry argued none of Cosco's witnesses testified that he or she actually provided that document to Siry and that Mr. Siry denied receiving it. The trial court issued a minute order denying Cosco's motion for contractual attorney fees, stating:

26

"The evidence is in conflict with whether the [GTCs] were attached to the contract at the time of contracting. [Siry] point[s] to the testimony from Mr. Siry that he never received them and did not review them. Further, attached to the contract was a third page which contained general labor rates and other information, which was confusing and could have been construed as the 'terms and conditions.' Further, the GTCs were not produced in discovery, according to [Siry] and were only unearthed at the time of trial. . . .

"The evidence seems to be that: (1) Curt Moon failed to identify GTCs in [his] deposition; (2) the fire alarm contract . . . does not attach or contain the GTCs; (3) the Siry job file does not contain them; (4) Mr. Siry testified that he did not receive them; (5) Cosco did not produce them in discovery or in response to the court's order that project documents be produced. Cosco could only point to testimony of a 'custom and practice' to provide the GTCs. Cosco does not point to evidence that the GTCs were actually provided or attached to the contract.

"The fact that the GTCs were attached to the [fire alarm] contract admitted at trial [citation] does not mean that the jury found that the GTCs were, in fact, a part of the contract.

"Based on this, the Court cannot find that the reference to the GTCs and the attorney fees clause therein was clear and unequivocal. The Court also notes that [Siry] did not pray for attorney fees in their July 2009 Cross-Complaint, which appears to support [Siry's] denial that they were provided the GTCs."

B

Cosco argues the trial court erred by denying its requests for special jury instructions and special jury findings on the question of whether its GTCs were incorporated into its contracts with Siry. However, Cosco's argument appears to be based on a faulty premise—i.e., that a jury must decide all questions of disputed fact that may be relevant to a trial court's rulings on posttrial motions (e.g., motions for contractual attorney fees and costs). The case law is clear that a party does *not* have a right to a jury

27

trial on motions for attorney fees.[6] (See, e.g., *Mabee v. Nurseryland Garden Centers, Inc.* (1979) 88 Cal.App.3d 420, 426.) Cosco does not cite any case or other authority to the contrary. Therefore, Cosco was not entitled to either special jury instructions or special jury findings on questions of fact relating to its then-anticipated posttrial motion for attorney fees.

Furthermore, the trial court properly exercised its discretion by denying the requested instructions and jury findings based on its conclusion they were not necessary for the jury to decide Cosco's claims against Siry and on the possibility they would cause the jury to place more importance on those issues than the many other factual questions before it. (Cf. *Pantoja v. Anton* (2011) 198 Cal.App.4th 87, 129.) Cosco merely argues that jury findings on the question of incorporation of its GTCs would have been helpful to the court when subsequently deciding its posttrial motion for contractual attorney fees. To the extent that may be true, we nevertheless conclude Cosco has not carried its burden on appeal to show the trial court erred by denying its requests for the special instructions and special jury findings or, for that matter, that Cosco was prejudiced by that purported error (i.e., it is reasonably probable Cosco would have obtained a more favorable result

---

[6] A different rule applies when attorney fees are sought as damages in a civil action. (See, e.g., *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 819-820; Cal. Const., art. I, § 16; Code Civ. Proc., § 592.)

had the jury been so instructed and made special findings).[7] (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

## VII

### *Incorporation of General Terms and Conditions*

Cosco also contends the trial court erred by denying its motion for attorney fees because there is insufficient evidence to support its finding that Cosco's GTCs document that included an attorney fee provision was not incorporated into its written contracts with Siry.

### A

"A contract may validly include the provisions of a document not physically a part of the basic contract. . . . 'It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document. [Citations.] But each case must turn on its facts. [Citation.] For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.' " (*Williams Constr. Co. v. Standard-Pacific Corp.* (1967) 254 Cal.App.2d 442, 454 (*Williams*).)

---

7    We also reject Cosco's conclusory assertion that the trial court and/or jury necessarily concluded its GTCs document was incorporated into its contracts with Siry.

"Whether a document is incorporated into the contract depends on the parties' intent as it existed at the time of contracting. The parties' intent must, in the first instance, be ascertained objectively from the contract language. [Citation.] However, '[t]he use of extrinsic evidence to show [whether] several written instruments were intended to constitute a single contract does not involve a violation of the parol evidence rule.' [Citation.] The applicability of Civil Code section 1642 is a question of fact for the trial court, and the appellate court will affirm the court's resolution if it is supported by substantial evidence." (*Versaci v. Superior Court* (2005) 127 Cal.App.4th 805, 814-815.) Civil Code section 1642 provides: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

B

Contrary to Cosco's assertion, we conclude there is substantial evidence to support the trial court's finding that its GTCs document was not incorporated into its contracts with Siry. First, there is substantial evidence to support the court's finding the contracts' reference to the GTCs document was not "clear and unequivocal," as required for incorporation. (*Williams, supra*, 254 Cal.App.2d at p. 454.) The parties presented conflicting parol evidence on the question of the contracts' provisions and whether the GTCs were included in those contracts. Although Cosco's witnesses testified it was their custom and practice to give copies of the GTCs document to their customers, Moe Siry testified that before Cosco filed the instant action he did not receive a copy of that document at the time he signed the contracts or thereafter. Furthermore, as the trial court

30

found, a third page titled "Time Material Rates," containing general labor rates and other information, was attached to the fire sprinkler contract and therefore was confusing and could have been reasonably construed by Siry as the "terms and conditions" referenced in the main contract. Also, the GTCs document was not produced by Cosco in discovery, but disclosed to Siry only at the time of trial. We conclude there is substantial evidence to support the trial court's finding the contracts' references to Cosco's GTCs were not clear and unequivocal. (*Versaci v. Superior Court*, *supra*, 127 Cal.App.4th at pp. 814-815; *Williams*, at p. 454.) Therefore, the court properly concluded the GTCs document, including its attorney fees provision, was not incorporated into the contracts.[8] Because that attorney fee provision was not incorporated into Cosco's contracts with Siry, the court correctly denied Cosco's motion for contractual attorney fees. Cosco has not carried its burden on appeal to persuade us otherwise.[9]

---

[8]    Because we conclude there is substantial evidence to support the trial court's finding that one of the requirements for incorporation by reference was not satisfied, we need not address the sufficiency of the evidence to support findings on the other three requirements discussed above. (*Williams*, *supra*, 254 Cal.App.2d at p. 454.)

[9]    We are not persuaded by Cosco's citation to a previous contract (i.e., Exh. 6003) with Siry as proof that Moe Siry was aware of its GTCs document. First, Cosco does not cite to the record on appeal where that previous contract is included, nor has it transferred that exhibit to this court for our consideration. Second, to the extent the trial court considered that evidence, it was merely part of the disputed evidence on the issue of incorporation, which issue the court found in Siry's favor. It is not our function on appeal to reweigh the evidence.

31

VIII

*Section 998 Offer*

DCI contends the trial court erred by finding its pretrial settlement offer to Siry was not a valid section 998 offer and, based thereon, granting in part Siry's motion to tax its costs, including expert witness fees, incurred after its settlement offer.

A

After the jury returned its verdict in DCI's favor and against Siry, DCI filed a memorandum of costs that requested a total of $289,407.26, including $241,023.59 in expert witness fees. Siry filed a motion to tax DCI's costs, arguing DCI's settlement offers were not valid under section 998 and therefore it was not entitled to its expert witness fees. Siry asked the trial court to strike $253,842.94 of the $289,407.26 total amount of costs DCI requested. Siry argued DCI's settlement offers were improperly made *jointly* to two distinct plaintiffs (i.e., Siry Investments, L.P., and 1835 Columbia Street, L.P.) and were not apportioned between them. Siry argued both plaintiffs were, and should be considered, separate entities and parties. Siry also argued the settlement offer improperly required both offerees to release all known and *unknown* claims against DCI. In support of its motion to tax costs, Siry submitted a declaration of its counsel, Gregory Hagen, who stated he had received two settlement offers from DCI before trial. On February 8, 2011, he received an offer from DCI to settle the case for $100,000. On or about March 8, 2011, he received an offer from DCI to settle the case for $150,000 and attached a copy of that offer to his declaration. (Because the March 8 offer superseded

32

the earlier February 8 offer, we discuss only the terms and conditions of the March 8 offer in deciding this appeal.)  DCI's March 8 offer stated in part:

> "[DCI] hereby offers to compromise all of PLAINTIFFS' claims against DCI for a total amount of $150,000 . . . with all parties to bear their respective attorney's fees and costs.  This Offer to Compromise is made pursuant to . . . *Section 998.*  This Offer to Compromise is conditioned upon the following: [¶] . . . [¶]

> "2.  This Offer to Compromise, if accepted, will proceed by way of a mutual settlement and release of any and all claims known and unknown, as between PLAINTIFFS on the one hand, and DCI, on the other hand; a mutual waiver of *Civil Code Section 1542* and dismissal with prejudice of PLAINTIFFS' operative complaint and not by way of the entry of any judgment.  [Citation.]"

DCI opposed Siry's motion to tax its costs, arguing its settlement offers were valid under section 998 because the two offerees/plaintiffs had a unity of interest and the Civil Code section 1542 waiver provision is common in settlement agreements.  In reply to DCI's opposition, Siry again argued that the joint settlement offer was invalid under section 998.

At the hearing on Siry's motion to tax DCI's costs, the trial court noted the jury instructions and verdict forms treated the two Siry plaintiffs as separate entities and DCI conceded the jury could have returned a verdict in favor of one plaintiff and not the other.  On June 13, 2012, the court issued a minute order that granted in part Siry's motion to tax costs and taxed DCI's expert witness fees.  First, the court rejected Siry's argument that DCI's settlement offer was invalid because it required Siry to release both known and unknown claims against DCI, as well as requiring a Civil Code section 1542 waiver.  Second, the court agreed with Siry's argument that DCI's settlement offer was invalid

33

under section 998 because it was made jointly to the two offerees/plaintiffs, stating: "A single offer to more than one person must generally be apportioned and unconditional." Rejecting DCI's argument that the two offerees/plaintiffs should be considered to be a single entity, the court stated:

> "[T]he jury was instructed pursuant to CACI 103 and 104, identifying Siry Investments and 1835 Columbia as separate legal entities and as separate parties requiring separate consideration. There is no support for DCI's contention that either Plaintiff could have accepted the offer for both entities. While Siry Investments and 1835 Columbia filed a unitary lawsuit and may have had a unitary trial strategy, 1835 Columbia and Siry Investments are both separate persons and separate parties. Corporations Code [section] 207 provides that a corporation shall have all the powers of a natural person in carrying out its business activities. The same is true of a partnership, which is an entity 'distinct from its partners.' [Citation.] In addition, Siry Investments and 1835 Columbia were listed separately on the jury verdict forms.
>
> " . . . DCI, as the offeror, has not carried its burden to show Siry Investments and 1835 Columbia possessed 'a unity of interest such that there is a single indivisible injury.' [Citation.] Offers are strictly construed in favor of the party sought to be subjected to the penalties of . . . [section] 998. [Citation.]"

The court further found that *if* it had found DCI's offer valid under section 998, it would have found DCI's expert witness fees to be reasonable in amount. The court also granted in part Siry's motion to tax certain costs other than DCI's expert witness fees. The trial court subsequently entered a judgment in favor of DCI and ordered that DCI shall recover from Siry costs in the amount of $38,903.90.

B

Under section 998, any party may, at least 10 days before trial, "serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be

34

entered in accordance with the terms and conditions stated at that time." (§ 998, subd. (b).) The failure to timely accept a section 998 offer can have adverse consequences for the offeree. If a plaintiff/offeree does not obtain a more favorable result at trial, that plaintiff/offeree cannot recover its postoffer costs, must pay the defendant/offeror's postoffer costs, and may be required to pay the defendant/offeror's reasonably incurred expert witness fees. (§ 998, subd. (c)(1).) The purpose for such penalties against a party that does not accept a section 998 offer is to encourage the settlement of lawsuits before trial. (*Taing v. Johnson Scaffolding Co.* (1992) 9 Cal.App.4th 579, 583 (*Taing*).)

In general, " 'a section 998 offer made to multiple parties is valid only if it is expressly apportioned among them and not conditioned on acceptance by all of them.' " (*Burch v. Children's Hospital of Orange County Thrift Stores, Inc.* (2003) 109 Cal.App.4th 537, 544.) "With unallocated settlement offers to multiple plaintiffs, it may be impossible to determine whether any one plaintiff received a less than favorable result at trial than that plaintiff would have received under the offer. [Citation.] Further, a lump-sum section 998 offer places an offeree who wishes to accept at the mercy of an obstinate offeree who does not." (*McDaniel v. Asuncion* (2013) 214 Cal.App.4th 1201, 1206.) "This [general] rule has been applied to both plaintiff and defendant offerors, and both where the offer is explicitly and impliedly conditioned on joint acceptance by the offerees." (*Menees v. Andrews* (2004) 122 Cal.App.4th 1540, 1544.)

"There is an exception to this [general] rule: where there is more than one plaintiff, a defendant may still extend a single joint offer, conditioned on acceptance by all of them, if the separate plaintiffs have a 'unity of interest such that there is a single,

indivisible injury.' " (*Peterson v. John Crane, Inc.* (2007) 154 Cal.App.4th 498, 505.)  To show a unity of interest or that one entity is the alter ego of another, courts consider whether there is " 'such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist . . . .' " (*Alexander v. Abbey of Chimes* (1980) 104 Cal.App.3d 39, 46-47 (*Alexander*).)  In so doing, trial courts consider a number of factors, including: "the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other.  [Citation.]  'No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied.  [Citation.]' " (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1342.)

The party making the purported section 998 offer has the burden of proving the offer is a valid one under section 998.  (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 799 (*Barella*); *Taing*, *supra*, 9 Cal.App.4th at p. 585.)  Accordingly, courts strictly construe a purported section 998 offer in favor of the offeree.  (*Barella*, at p. 799.)  "Finally, our Supreme Court has held that the legislative purpose of section 998 is generally better served by 'bright line rules' that can be applied to these statutory settlement offers—at least with respect to the application of contractual principles in determining the validity and enforceability of a settlement agreement." (*Ibid.*)

In reviewing a trial court's determination regarding "the validity, or reasonableness, of a section 998 offer," we apply the abuse of discretion standard of

36

review.  (*Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co.* (1999) 73 Cal.App.4th 324, 329.)  In reviewing a trial court's factual finding based on disputed evidence and inferences regarding whether two section 998 offerees had a unity of interest or one entity was the alter ego of the other, we apply the substantial evidence standard of review. (*Alexander*, *supra*, 104 Cal.App.3d at p. 46.)  To the extent the trial court's ruling is based on undisputed evidence and inferences, we apply the de novo standard of review. (*Barella*, *supra*, 84 Cal.App.4th at pp. 797-798.)

## C

We conclude DCI has not carried its burden on appeal to show the trial court abused its discretion by finding its settlement offer to Siry was not valid under section 998.  The record shows DCI made a joint offer to the two Siry plaintiffs.  Its March 8, 2011, offer stated that DCI "hereby offers to compromise all of *PLAINTIFFS'* claims against DCI for a total amount of $150,000."  (Italics added.)  The offer did not apportion that total amount between the two plaintiffs, Siry Investments, L.P., and 1835 Columbia Street, L.P.  As discussed above, a section 998 offer made to two parties is generally valid *only if* it is *expressly apportioned* between them and not conditioned on acceptance by both of them.  (*Burch v. Children's Hospital of Orange County Thrift Stores, Inc.*, *supra*, 109 Cal.App.4th at p. 544; *Menees v. Andrews*, *supra*, 122 Cal.App.4th at p. 1544.)  Therefore, unless DCI carried its burden to show an exception to that general rule applied, DCI's joint offer was not valid under section 998.  (*Barella*, *supra*, 84 Cal.App.4th at p. 799 [offeror has burden of proof to show offer is valid under section 998]; *Taing*, *supra*, 9 Cal.App.4th at p. 585 [same].)

As discussed above, an exception to the general rule prohibiting joint section 998 offers exists where the separate offerees have a unity of interest such that there is a single, indivisible injury. (*Peterson v. John Crane, Inc.*, *supra*, 154 Cal.App.4th at p. 505.) To show a unity of interest or that one entity is the alter ego of another, courts consider whether there is such unity of interest and ownership that the separate personalities of the entities no longer exist. (*Alexander*, *supra*, 104 Cal.App.3d at pp. 46-47.)

Based on our review of the disputed evidence and inferences regarding whether Siry Investments, L.P., and 1835 Columbia Street, L.P., had a unity of interest or one entity was the alter ego of the other, we conclude there is substantial evidence to support the trial court's finding that the two Siry offerees/plaintiffs did *not* have a unity of interest for purposes of the section 998 joint offer exception.[10] (*Alexander*, *supra*, 104 Cal.App.3d at p. 46.) The two offerees/plaintiffs were organized as separate limited partnerships and had different interests in the Project. In attempting to show the two entities had a unity of interest, DCI argued below that they had litigated the instant case with the same purpose, theory, and allegations and purportedly sought a mutual recovery against DCI. DCI cited to their pleadings and discovery actions and their own joint section 998 offer to DCI. However, we cannot conclude that unified trial strategy and conduct necessarily proves, as a matter of law, that two offerees/plaintiffs have a unity of

---

[10]     To the extent DCI argues the evidence and inferences therefrom were undisputed, we disagree and conclude the substantial evidence standard of review applies to the trial court's finding on this issue.

interest within the meaning of the section 998 joint offer exception. On the contrary, we believe, as the trial court found, that two offerees/plaintiffs can, and should be able to, act in a similar or mutual manner in a particular lawsuit without losing their separate identities for purposes of section 998. Likewise, a joint offer by plaintiffs to a single defendant does not prove that they had a unity of interest for purposes of the defendant's own joint offer to those plaintiffs.

Furthermore, although DCI argued Moe Siry was the principal of both Siry offerees/plaintiffs, that fact did not prove the two entities necessarily had, as a matter of law, a unity of interest for purposes of the section 998 joint offer exception. A person can be the managing partner or principal of each of two limited partnerships without making those entities unified for purposes of the section 998 joint offer exception. Although DCI cites to selected excerpts from Moe Siry's trial testimony in which he apparently shows some confusion regarding the ownership of the two entities, that testimony did not constitute an admission of unity of interest of the entities under section 998, nor was the trial court required by that testimony to find such unity of interest.[11] On the contrary, the court could reasonably consider *all* of the evidence presented at trial, together with the evidence and arguments presented by the parties on DCI's motion to tax costs, and find the two offerees/plaintiffs were not, in fact, unified in interest for purposes of the section 998 joint offer exception. None of the cases cited by DCI are apposite to

---

[11]     We reach a similar conclusion regarding Moe Siry's trial testimony regarding Siry's settlement agreement with the Project's architect in which he stated the two limited partnerships were a "team," were the "same," and were "interlocked."

this case, and they do not persuade us to reach a contrary conclusion. (See, e.g., *Vick v. DaCorsi* (2003) 110 Cal.App.4th 206 [involving a husband and wife's community property interest].) Because DCI has not carried its burden on appeal to show there is insufficient evidence to support the trial court's finding that there was no unity of interest between Siry Investments, L.P., and 1835 Columbia Street, L.P., for purposes of the exception to the general rule prohibiting joint offers under section 998, we conclude the trial court did not abuse its discretion by finding DCI's joint offer to those two plaintiffs was not a valid offer under section 998, granting in part Siry's motion to tax DCI's costs, and awarding DCI costs in the amount of $38,903.90 against Siry.[12]

## DISPOSITION

The judgment is affirmed. Salehi is entitled to reasonable attorney fees and costs incurred on appeal. All other parties are to bear their own costs on appeal.


McDONALD, J.

WE CONCUR:

McCONNELL, P. J.

McINTYRE, J.

---

[12]    Because we have disposed of DCI's appeal based on the above ground, we need not address the parties' other arguments (e.g., whether DCI's joint offer improperly included language requiring Siry to release unknown claims against DCI).